STEUBEN SECURITIES CORPORATION, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106257.    Promulgated January 5, 1943.

*William Flannery, Esq.,* and *Charles L. Brayton, Esq.,* for the petitioner.

*Loren P. Oakes, Esq.,* for the respondent.

**OPINION.**

STERNHAGEN, *Judge:* For the taxable years 1937 and 1938, the Commissioner has determined that the petitioner was a personal holding company as defined in the revenue acts of 1937, sections 352 and 354, and 1938, sections 402 and 404. The definition has now

been carried into the Internal Revenue Code, chapter 2, subchapter A. Petitioner says that sections 503 (a) (1) and (2)[1] are inapplicable because more than 50 percent in value of its outstanding shares was not owned either actually or constructively by or for five or less individuals. It says that the statutory meaning of constructive ownership (sec. 503 (a) (1)), does not operate because, in respect of the several trusts which owned its shares, the beneficiaries and the respective ownerships of shares were so distributed that no five individuals together owned more than 50 percent in value. The word "beneficiaries" in section 503 (a) (1) is read to include all who have a beneficial interest in the property or income of the trust, no matter whether the interest is immediate, with present enjoyment, or remote, such as a remainder, with enjoyment withheld until some future time. Counsel say in their brief:

Neither Congress by legislation nor the Commissioner by regulations has made any distinction between income beneficiaries and remaindermen. Under the personal holding company statutes the term "beneficiaries" clearly includes both vested or contingent remaindermen as well as income beneficiaries and the apportionment should be according to the value of the interest of each

We think this is an inadmissible construction of the term as it appears in this statute. It would frustrate the purpose of the personal holding company statute, and leave open a loophole of the sort that it was designed to close.[2]

The petitioner was a family corporation, its shares being all held within the Houghton family. All were sisters, brothers, spouses, ancestors or lineal descendants, and the ownership of each is therefore the constructive ownership of the others. It is only by looking upon the holders of more remote interests as within the statutory term "beneficiaries" and computing actuarially a present value of their interests that the petitioner arrives at the conclusion that the value of the interests in the corporation's shares is so spread out that 50 percent or more is owned, actually or constructively, by five or more persons. Thus petitioner would escape the personal holding company surtax, even though it is a family corporation and substantially more than 50 percent in value of its shares was entirely enjoyed during the taxable year by members and controlled by intra-

---

[1] SEC. 503. STOCK OWNERSHIP.

(a) CONSTRUCTIVE OWNERSHIP.—For the purpose of determining whether a corporation is a personal holding company, insofar as such determination is based on stock ownership under section 501 (a) (2), section 502 (e), or section 502 (f)—

(1) STOCK NOT OWNED BY INDIVIDUAL.—Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by its shareholders, partners, or beneficiaries.

(2) FAMILY AND PARTNERSHIP OWNERSHIP.—An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family or by or for his partner. For the purposes of this paragraph the family of an individual includes only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.

[2] See The Background of the Revenue Act of 1937, by Randolph E. Paul, 5 University of Chicago Law Review, 41 (Dec. 1937).

family trustees for members of the family group. The five family groups, as shown in the findings, owned 32,930, or over 87 percent, of the outstanding 38,740 shares in 1937, and almost as much in 1938. The legislation was clearly not intended to exempt the corporation from surtax by treating the remote and ultimate beneficiaries as if they had present interests. The word "beneficiaries" has, it is true, been variously defined, and generally includes persons who have interests both present and future, immediate and remote, but there is nothing in the statute itself or in the legislative history which indicates a purpose, by the use of the word in a broad sense, to countenance such an exclusion from the plan.

When we regard the cases in which the Supreme Court has overridden formalism in tax cases, we are bound to construe such an elastic word as "beneficiary" to promote the known intendment of the statute as shown in legislative discussion and reports and in contemporary literature.[3] In *Helvering* v. *Clifford*, 309 U. S. 331, where a family trust had been created, the Court disregarded the trust, would not permit mere formalism to obscure family solidarity, treated the settlor as the substantial owner of the trust property, and, to promote the purpose of the taxing statute, held him taxable upon the income. In *Helvering* v. *Hallock*, 309 U. S. 106, it was held that property in trust was still part of the settlor's gross estate for the purpose of the taxing statute, even though he had but a reversionary interest in it. Nowhere is any comment to be found upon the statutory word "beneficiaries," cf. *Renton Investment Co.* v. *Commissioner*, 131 Fed. (2d) 33, and it would be quite unwarranted to construe the term so that it would enable the continuance of the evil which the legislation was intended to reach, i. e., the accumulation in a family corporation of distributable income and thus preventing its being subjected to individual surtax which would result if it were distributed to the members of the family. *Noteman* v. *Welch*, 108 Fed. (2d) 206; *Foley Securities Corporation* v. *Commissioner*, 106 Fed. (2d) 731. To achieve the purpose of the statute, we think the legislation must be read so that the word "beneficiaries" means those who have a direct present interest in the shares and income in the taxable year and not those whose interest, whether vested or contingent, will or may become effective at a later time. With this meaning given to the word, there is no doubt

---

[3] Reports of Senate Finance Committee and House Ways and Means Committee, Revenue Bill 1934, 73d Cong., 2d sess.

The Message of the President, June 1, 1937, Tax Evasion and Evaders.

Report Ways and Means Committee on Revenue Bill of 1937, 75th Cong., 1st sess.

The Background of the Revenue Act of 1937, footnote 1, *supra*.

Section 102 and Personal Holding Company Provisions of the Internal Revenue Code. Harry J. Rudick, Yale Law Journal, vol. 49, p. 171 (Dec. 1939).

The Problem of Personal Income Tax Avoidance, Harry J. Rudick, Law and Contemporary Problems (spring 1940).

that more than 50 percent in value of the petitioner's shares is owned actually or constructively by less than five persons.

Neither party makes reference to section 507, which has been in the statute since 1934 (sec. 351 (b) (4)), providing that the terms used in the section or title should have the same meaning as in Title I. This must be subordinated to the purpose of the personal holding company tax and may not be construed to defeat it, as petitioner's proposed application of it would do.

Alanson B. Houghton was, in the taxable years, not the direct owner of any of petitioner's shares, and petitioner argues that he can not, therefore, be regarded as a constructive owner, because the statutory definition of constructive ownership implies only an enlargement of actual ownership by the inclusion of shares constructively owned. The statute, however, makes no such limitation upon the use of constructive ownership, and it is made clear in the Ways and Means Committee Report on the Revenue Bill of 1937 that none was intended. This appears at page 7 of the report:

The provisions discussed below establish methods of bringing into the ownership of an individual stock actually or constructively owned by others. As under Title IA of the present law, it is not necessary that the individual who may be counted to make five individuals, under the constructive ownership rules, actually own stock himself. To exclude the case where he owned no stock would permit avoidance by the employment of the device of placing the stock in others whose actions would be subject to the individual's control because of the family or other relationship existing between him and the actual owner.

We are bound, therefore, to regard Alanson B. Houghton as the constructive owner of the shares held for those persons who are within the relationship to him set forth in section 503 (a) (2), namely, brothers, sisters, spouse, ancestors, and lineal descendants.

Upon the hypothesis that the values of the future interests in the shares are to be determined, the petitioner contests the respondent's method of determination. Since only the owners of life interests are the beneficiaries under the statute, the apportionment of the values between the life interests and the remainder interests is not pertinent.

The petitioner also assails the statute as being unconstitutional. In some aspects the statute has been sustained, in *Foley Securities Corporation* v. *Commissioner, supra; R. Simpson & Co.*, 44 B. T. A. 498; affd., 128 Fed. (2d) 742; certiorari denied, 317 U. S. 677; *Saxon Trading Corporation*, 45 B. T. A. 16. We are unable to hold that as applied by the Commissioner to this petitioner it violates the Constitution.

Reviewed by the Court.

*Decision will be entered for the respondent.*

LEECH, *J.*, dissents.