CALVIN D. MITCHELL AND FAY BOND MITCHELL, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 71479.  Filed December 30, 1960.

*Richard E. Thigpen, Esq.*, and *Marcus T. Hickman, Esq.*, for the
petitioners.

*Richard C. Forman, Esq.*, for the respondent.

TRAIN, *Judge:* Respondent determined a deficiency in the peti-
tioners' income tax for the calendar year 1954 in the amount of
$19,405.15.  The only issue is whether stock held by a trust was
"owned" by the beneficiaries thereof within the meaning of section
1239 of the Internal Revenue Code of 1954, making that section ap-
plicable to a sale of depreciable property by one of the petitioners to
the corporation, some of whose stock was held by the trust.

### FINDINGS OF FACT.

Most of the facts are stipulated and are hereby found as stipulated.
Only those facts necessary to an understanding of the issue are set
forth below.

Petitioners Calvin D. Mitchell, hereinafter referred to as petitioner,
and Fay Bond Mitchell, husband and wife, reside in Matthews, North
Carolina.  They filed their joint income tax return for the calendar
year 1954 on the cash basis with the district director of internal reve-
nue for North Carolina.

Fay Mitchell Choate, Calvin D. Mitchell, Jr., and Mary May
Mitchell are children of petitioners.  Fay Mitchell Choate was born
on February 17, 1932, while Calvin D. Mitchell, Jr., and Mary May
Mitchell were both born on February 13, 1935.  Fay Mitchell Choate
was married sometime prior to August 9, 1954.

Southern Appliances, Incorporated, hereinafter sometimes referred
to as Southern, was incorporated in 1943 under the laws of the State
of North Carolina.  The corporation maintains its principal office and
place of business at 1000 West Morehead Street, Charlotte, North
Carolina, and, during the period here involved, was engaged in the
business of wholesale distributor of electrical household appliances.

Southern keeps its books and files its tax returns on an accrual basis of accounting and uses a fiscal year ending on October 31.

Wachovia Bank and Trust Company (hereinafter referred to as the bank) is a banking corporation organized and existing under the laws of the State of North Carolina with its principal office and place of business located in Winston-Salem, North Carolina. The bank maintains branch banks and offices for banking and trust business in 11 other cities in North Carolina, including Charlotte.

On August 30, 1948, petitioner entered into an agreement with the bank, whereby he created a separate trust for each of his three children, and to which he contributed stock of Southern as follows:

> *Fay Mitchell (Choate) Trust:*
>    300 shares no-par common.
>    51 shares $100-par-value 7% preferred.
> *Calvin D. Mitchell, Jr., Trust:*
>    300 shares no-par common.
>    52 shares $100-par-value 7% preferred.
> *Mary May Mitchell Trust:*
>    300 shares no-par common.
>    52 shares $100-par-value 7% preferred.

On November 1, 1950, petitioner contributed an additional 166 shares of Southern no-par common stock to each of the three separate trusts. In 1951, Southern redeemed and canceled all of its preferred stock.

On August 17, 1950, Southern purchased the land and building, known as the Ford Building, located at 1000 West Morehead Street, Charlotte, North Carolina, for $167,500. On September 29, 1952, this same property was sold to petitioner by Southern for $167,500. The sale was duly authorized by Southern's board of directors. On August 9, 1954, the property was sold to Southern by petitioner for $199,500. This purchase was duly authorized by Southern's board of directors.

At the time of the sale of August 9, hereinafter referred to as the sale, the 7,634 shares of issued and outstanding no-par common stock, the only stock outstanding, of Southern were owned as follows:

| Stockholder-owners | Number of shares | Percentage of outstanding shares |
|---|---|---|
| Calvin D. Mitchell | 4,379 | 57.36 |
| Fay Bond Mitchell | 1,365 | 17.88 |
| Calvin D. Mitchell, Jr | 164 | 2.15 |
| Mary May Mitchell | 164 | 2.15 |
|     Subtotal | 6,072 | 79.54 |
| Fay Mitchell Choate | 319 | 4.18 |
| Wachovia Bank and Trust Company, Trustee under Agreement with Calvin D. Mitchell dated August 30, 1948, for Fay Mitchell Choate | 311 | 4.07 |
|     Subtotal | 630 | 8.25 |

| Stockholder-owners | Number of shares | Percentage of outstanding shares |
|---|---|---|
| Wachovia Bank and Trust Company, Trustee under Agreement with Calvin D. Mitchell dated August 30, 1948, for Calvin D. Mitchell, Jr_____ | 466 | 6. 104 |
| Wachovia Bank and Trust Company, Trustee under Agreement with Calvin D. Mitchell dated August 30, 1948, for Mary May Mitchell_____ | 466 | 6. 104 |
| Subtotal_____ | 932 | 12. 21 |
| Total_____ | 7, 634 | 100. 00 |

The three trusts were separate and irrevocable. Petitioner's purpose in setting up the trusts was to accumulate some properties for his children after they were of age. Under the agreement creating the trusts, income of the trusts was to be accumulated and reinvested and not distributed to any minor beneficiary except in the event of the prior death of the grantor, petitioner, or as the trustee might determine necessary for the proper support, maintenance, and education of the beneficiaries, or to meet any emergency in their lives. As each minor beneficiary reached the age of 21, the income and a portion of the principal of his trust was to be distributed to him and thereafter, at certain specified ages, he was to receive the remainder of the corpus. If any beneficiary died without leaving issue, the undistributed portion of his trust was to be divided among his surviving siblings; if he died leaving minor issue, the trust assets were to be held in trust for them until they reached their majority. If all of the children died without leaving issue, the net income of the trusts was to be paid to petitioner's wife for life, with discretion in her to invade the principal without restriction; upon her death the trust was to terminate, and the assets were to be distributed to the petitioner's next of kin, according to the State statute of distribution. No power or right to control the trust corpus or income or the administration of three trusts was retained or reserved by the petitioner under the trust agreement.

In accordance with the terms and provisions of the agreement dated August 30, 1948, the bank, the trustee, accumulated and reinvested the net income earned by each of the three trusts and did not distribute any income or principal of a trust prior to the time that the particular child for whom the trust was created had reached the age of 21 years. The trusts created for Calvin D. Mitchell, Jr., and Mary May Mitchell each earned from August 30, 1949, to February 13, 1956, their 21st birthday, the amounts of $15,252.38 and $15,236.89, respectively.

The net income earned by the three trusts and the proceeds received from the redemption by Southern of its preferred stock were invested by the bank in the common trust fund maintained by it. The decision on all investments of principal and income of the three trusts was made by the bank.

On August 9, 1954, petitioner's adjusted basis in the property was $153,903.36; of that amount, $30,000 was allocated to the land and $123,903.36 was allocated to the building. Of the total amount realized on the sale, the amounts of $35,730 and $163,770 were properly allocable to the land and building, respectively. Petitioner reported the total gain realized, $45,596.64, as long-term capital gain.

In his statutory notice of deficiency, respondent determined that the amount of gain realized from the building, $39,866.64, was taxable as ordinary income pursuant to section 1239 of the Internal Revenue Code of 1954.

On August 9, 1954, more than 80 per cent in value of the stock of Southern was "owned" by the petitioner, his spouse, his minor children, and minor grandchildren within the meaning of section 1239 of the Internal Revenue Code of 1954.

OPINION.

Section 1239 of the Internal Revenue Code of 1954,[1] the provision of law with which we are here concerned, relates to the tax treatment of the gain from the sale of certain property between husband and wife or between an individual and a "controlled corporation." Under the specific circumstances set forth in the section, such a gain is denied capital gains treatment with the result that it is taxed as ordinary income.

Section 1239 was derived without substantive modification from section 117(o) of the Internal Revenue Code of 1939, having been enacted originally as part of the Revenue Act of 1951.[2] According

---

[1] SEC. 1239. GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.

(a) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

(1) between a husband and wife; or

(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren:

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) SECTION APPLICABLE ONLY TO SALES OR EXCHANGES OF DEPRECIABLE PROPERTY.— This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

[All references herein to sections are to the Internal Revenue Code of 1954, unless otherwise indicated.]

[2] Sec. 328(a), Revenue Act of 1951, ch. 521, 65 Stat. 452.

to the report of the Committee on Ways and Means which accompanied that legislation,[3] the provision was:

intended to forestall the practice of selling depreciable assets to controlled corporations in order to obtain the substantial tax benefits available under existing law. This practice, which is reported by the Bureau of Internal Revenue to be of growing importance, may be illustrated as follows: Assume that a husband and wife own and operate a corporation engaged in retail trade, that they also own as individuals the building used by this corporation and that the current value of the building is well in excess of its adjusted basis. If the building is sold to the corporation, a capital-gains tax will ordinarily be paid, but the building then has, in the hands of the corporation, an adjusted basis which is greater than the basis in the hands of the individual shareholders by the amount of the gain realized on the sale to the corporation. The property being depreciable the corporation will then be able to write off the increase in the adjusted basis over the remaining life of the building. The resulting additional depreciation charges are, of course, an offset to ordinary income. Thus, in effect, the immediate payment of a capital-gains tax has been substituted for the elimination, over a period of years, of the corporate income taxes on an equivalent amount. The substantial differential between the capital-gains rate and the ordinary rates makes such a substitution highly advantageous when the sale may be carried out without loss of control over the asset because the corporation to which the asset is sold is controlled by the individuals who make the sale.

Section 310 of this bill eliminates the tax advantage from such transactions by denying capital-gains treatment to the transferor * * *

Petitioner contends that the stock held in trust for his minor children was "owned" by the trustees and not the children within the meaning of section 1239(a)(2), and that the portion of respondent's regulations [4] indicating otherwise is either inapplicable or invalid. Respondent, on the other hand, relies upon his regulation, contending that the stock was "beneficially owned" by the children, and that the regulation is a reasonable interpretation of the word "owned" as used in section 1239. We agree with respondent.

[3] H. Rept. No. 586, 82d Cong., 1st Sess. (1951), p. 26.

[4] Income Tax Regs.: Sec. 1.1239–1 GAIN FROM SALE OR EXCHANGE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.—Section 1239 provides in general that any gain from the sale or exchange of depreciable property between a husband and wife or between an individual and a controlled corporation shall be treated as ordinary income. Thus, any gain recognized to the transferor from a sale or exchange after May 3, 1951, directly or indirectly, between a husband and wife or between an individual and a controlled corporation, of property which, in the hands of the transferee, is property of a character subject to an allowance for depreciation provided in section 167 (including such property on which a deduction for amortization is allowable under section 168 or 169) shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. For the purpose of section 1239, a corporation is controlled when more than 80 percent in value of all outstanding stock of the corporation is beneficially owned by the taxpayer, his spouse, and his minor children and minor grandchildren. For the purpose of this section, the terms "children" and "grandchildren" include legally adopted children and their children. The provisions of section 1239(a).(2) are applicable whether property is transferred from a corporation to a shareholder or from a shareholder to a corporation.

Section 1.1239–1, Income Tax Regs., was approved September 23, 1957, as part of T.D. 6253.

There is no doubt that the minor beneficiaries, Calvin D. Mitchell, Jr., and Mary May Mitchell, were not the legal owners of the stock held in trust for their benefit, and the respondent does not contend otherwise. His sole reliance is upon his regulation providing that beneficial ownership satisfies the statutory requirement of ownership. It is therefore necessary, first, to consider petitioner's contention that that portion of the regulation is not applicable because the minor beneficiaries were not the beneficial owners of the stock. Petitioner argues that the minor beneficiaries—

had no present right of enjoyment but only a vested future interest. Neither income nor principal could be distributed to them and in fact none was distributed to them. Under the agreement, their right to receive income or principal was contingent upon attaining their majority. If either had died before their twenty-first birthday, the assets of his or her trust would have passed not to his or her estate but to other designated beneficiaries.

Petitioner's contention in this regard is without merit. A beneficial interest need not be a vested present interest. Further, the statute itself is concerned with the "value" of ownership, and the contingencies referred to by petitioner do not materially reduce the value of the minor beneficiaries' interests. The expectancy of reaching the age of 21, and the rights of the three beneficiaries under the agreement creating the trusts are so great that, considering the direct ownership of the stock by petitioner, his spouse, and minor children, the "more than 80 percent" value test of the statute would be satisfied.[5]

*Steuben Securities Corporation*, 1 T.C. 395 (1943), to which neither party refers, involved the interpretation of the word "beneficiaries." In that case, the petitioner contended that it was not a personal holding company because not more than 50 per cent in value of its stock was held by or for five or less individuals. It argued that the word "beneficiaries" in the predecessor of section 544(a)(1), section 503(a)(1) of the Internal Revenue Code of 1939, included—

all who have a beneficial interest in the property or income of the trust, no matter whether the interest is immediate, with present enjoyment, or remote, such as a remainder, with enjoyment withheld until some future time, * * * [1 T.C. at 398.]

In rejecting that contention, we noted that while the "word 'beneficiaries' has * * * been variously defined, and generally includes persons who have interests both present and future, immediate and remote," such a broad definition would frustrate the purpose of the statute by excluding from its scope family corporations in which distributable income was being accumulated. Therefore, we concluded that:

---

[5] Petitioner, his spouse, and minor children owned outright on August 9, 1954, 79.54 per cent of the stock. Even if the contingencies reduced the value of the minor beneficiaries' ownership of the stock held in trust for them from 12.21 to 0.56 per cent, the statutory requirement that more than 80 per cent in value of the stock be owned by the persons mentioned above would be satisfied.

To achieve the purpose of the statute, * * * the legislation must be read so that the word "beneficiaries" means those who have a direct present interest in the shares and income in the taxable year and not those whose interest, whether vested or contingent, will or may become effective at a later time. * * *

No purpose of section 1239 would be served by the narrow concept of beneficial ownership we found necessary to apply to the word "beneficiaries" in *Steuben Securities Corporation, supra*. The efficacy of section 1239, as that of the personal holding company provisions, is partially dependent upon attributing ownership so that the percentage of ownership requirement is not easily avoided. But unlike the personal holding company provisions, the scope of the statute here involved is not adversely affected by increasing the number of constructive owners. Accordingly, if Congress intended that beneficial ownership would be sufficient for purposes of section 1239, we are convinced of the propriety of a broader and more general meaning of that term in respondent's regulation than we found applicable in *Steuben Securities Corporation, supra*. If valid, the portion of the regulation in question is applicable.

The abuse that section 1239 was directed against was the technique of converting ordinary income into long-term capital gain. Report, Staff of Joint Committee on Internal Revenue Taxation (Oct. 1951) pp. 35–36; 97 Cong. Rec., 82d Cong., 1st Sess. (1951), pp. 6918, 11739–40. Section 1239 operates to prevent that abuse by excluding the subject of a sale or exchange covered from the definition of a capital asset. Accordingly, if any doubts exist as to the meaning of the section, it must be broadly construed, *Corn Products Co.* v. *Commissioner*, 350 U.S. 46 (1955), as the capital gains provisions constitute a partial exemption from taxation. *Merton E. Farr*, 11 T.C. 552, 560 (1948), affirmed sub nom. *Sloan* v. *Commissioner*, 188 F. 2d 254 (C.A. 6, 1951); *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260 (1958); 3B Mertens, Law of Federal Income Taxation, sec. 22.11 (1958) (1960 cum. supp., sec. 22.11, note 71, for other cases). Certainly, the regulatory construction of the word "owned" as meaning "beneficially owned" is one that accords with common sense and would constitute a reasonable and valid implementation of the statute in question, absent some convincing evidence of a contrary congressional intent. The petitioner maintains that the legislative history of section 1239 clearly manifests such a contrary purpose.

Section 267, which antedates section 1239 by 17 years [6] prohibits among other things the deduction of losses on transactions which

---

[6] The predecessor of section 267 first appeared as section 24(a)(6) of the Revenue Act of 1934, ch. 277, 48 Stat. 680. Later, it was expanded by section 24(b) and (c) of the Revenue Act of 1936, ch. 690, 49 Stat. 1648, as amended by the Revenue Act of 1937, section 301, ch. 815, 50 Stat. 813, to substantially include what is now section 267(a), (b), and (c).

would be within the scope of section 1239 had they resulted in gains. Sec. 267(a) (1), (b) (1) and (2), and (c) (4) ; [7] 97 Cong. Rec., *supra* at 11740. Thus, while the two sections would seem to bear an obvious relation, Congress expressly has provided differences in their scope and in the applicable attribution rules. For example, while section 1239(a) (1) covers sales or exchanges between spouses, section 267 covers such transactions between members of the family which includes siblings (by the whole or half blood), spouses, ancestors, and lineal descendants. Sec. 267(b) (1) and (c) (4). Further, this same definition of family is used to attribute the stock owned by its members for purposes of section 267(a) (1) and (b) (2) to the individual participating in the transactions. Not only are more relationships included than in the attribution rule of section 1239(a) (2), but none of

---

[7] SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

(1) Losses.—In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b).

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) RELATIONSHIPS.—The persons referred to in subsection (a) are:

(1) Members of a family, as defined in subsection (c) (4) ;

(2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned directly or indirectly, by or for such individual;

(3) Two corporations more than 50 percent in value of the outstanding stock of each of which is owned, directly or indirectly, by or for the same individual, if either one of such corporations, with respect to the taxable year of the corporation preceding the date of the sale or exchange was, under the law applicable to such taxable year, a personal holding company or a foreign personal holding company;

(4) A grantor and a fiduciary of any trust;

(5) A fiduciary of a trust and a fiduciary of another trust, if the same person is a grantor of both trusts;

(6) A fiduciary of a trust and a beneficiary of such trust;

(7) A fiduciary of a trust and a beneficiary of another trust, if the same person is a grantor of both trusts;

(8) A fiduciary of a trust and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for the trust or by or for a person who is a grantor of the trust; or

(9) A person and an organization to which section 501 (relating to certain educational and charitable organizations which are exempt from tax) applies and which is controlled directly or indirectly by such person or (if such person is an individual) by members of the family of such individual.

(c) CONSTRUCTIVE OWNERSHIP OF STOCK.—For purposes of determining, in applying subsection (b), the ownership of stock—

(1) Stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries;

(2) An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family;

(3) An individual owning (otherwise than by the application of paragraph (2) any stock in a corporation shall be considered as owning the stock owned, directly or indirectly, by or for his partner;

(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and

(5) Stock constructively owned by a person by reason of the application of paragraph (1) shall, for the purpose of applying paragraph (1), (2), or (3), be treated as actually owned by such person, but stock constructively owned by an individual by reason of the application of paragraph (2) or (3) shall not be treated as owned by him for the purpose of again applying either of such paragraphs in order to make another the constructive owner of such stock.

the individuals need be minors. Moreover, instead of requiring, as does section 1239(a)(2), ownership of more than 80 per cent in value of the outstanding stock, section 267(b)(2) requires only more than 50 per cent of such ownership.

Of even more significance is the fact that section 267(c)(1) expressly provides what respondent here alleges is properly added by his regulation, namely, that stock held in trust shall be considered to be owned by the beneficiaries thereof.

While section 267 is probably the earlier provision most closely related in purpose to section 1239, it is not the only prior instance where Congress provided for the constructive ownership of stock and, in doing so, expressly provided that beneficiaries shall be considered the owners of the stock held in trust. Secs. 421(d)(1)(C), 544(a), and 544(a)(1).[8] Subsequently, the Internal Revenue Code of 1954 added section 318, which provides extensive constructive ownership rules for certain provisions of subchapter C,[9] including a trust beneficiary proportionate ownership rule based on actuarial value of the beneficial interest. Sec. 318(a)(2)(B).

Many other provisions of the Code expressly provide for the application, with modifications in some instances, of the provisions of section 267(b) or (c), or section 544(a), for determining ownership, or for other uses of the specified relationships.[10]

Further, in many of these same provisions, including the attribution sections themselves, the word "owned" is immediately modified by the phrase "directly or indirectly." No such words extend the concept of the word "owned" in section 1239. In that section, the phrase modifies only "sale or exchange." Sec. 1239(a); cf. sec. 267(a)(1).

The legislative history of section 1239 does not provide an explanation of why Congress omitted some of the more extensive attribution rules and employed therein a narrower meaning of "owned" than is found elsewhere. The House version[11] of the proposed section read as follows:

SEC. 310. TREATMENT OF GAIN ON SALES OF CERTAIN PROPERTY BETWEEN SPOUSES AND BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.

(a) DISALLOWANCE OF CAPITAL GAIN TREATMENT.—Section 117 (relating to capital gains and losses) is hereby amended by adding at the end thereof the following new subsection:

---

[8] Section 544(a) was enacted as section 351(b)(1) of the Revenue Act of 1934, ch. 277, 48 Stat. 680; section 421(d)(1)(C) as section 218(a) of the Revenue Act of 1950, ch. 994, 64 Stat. 906.

[9] See secs. 302(c), 304(c)(2), 306(b)(1)(A), 334(b)(3)(C), and 382(a)(3).

[10] Sections 503(c), 514(b)(2)(B), 681(b), 707(b)(3), 1235(d), and 1237(a)(2)(A) call for the application of section 267 (b) or (c) or both. New sections 178, 179, 341(e)(8), and presumably 1341(b)(2), enacted by the Technical Amendments Act of 1958, 72 Stat. 1606, secs. 15, 204, 20, and 60, respectively, also require the application of section 267(c). Sections 341(d), 542(a)(2), 543(a)(5), 543(a)(6), 543(a)(9), and 1551 of the Internal Revenue Code of 1954 require the application of the attribution rules of section 544(a).

[11] H.R. 4473, 82d Cong., 1st Sess. (1951), p. 97 (bill as introduced).

"(o) GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.—

"(1) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in paragraph (2)—

"(A) between a husband and wife; or

"(B) between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual,

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in subsection (j).

"(2) SUBSECTION APPLICABLE ONLY TO SALES OR EXCHANGES OF DEPRECIABLE PROPERTY.—The subsection shall apply only in the case of a sale or exchange of property by a transferor which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 23 (1).

"(3) STOCK OWNERSHIP.—For the purposes of determining, in applying paragraph (1) (B), the ownership of stock—

"(A) stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries;

"(B) an individual shall be considered as owning the stock owned, directly or indirectly, by or for his spouse;

"(C) if an individual owns more than 10 per centum in value of the outstanding stock of a corporation (including stock considered as owned by him under subparagraphs (a) and (B)), such individual shall be considered as owning the stock owned in such corporation, directly or indirectly, by or for his brothers and sisters (whether by the whole or the half blood), ancestors, and lineal descendants;

"(D) stock constructively owned by a person by reason of the application of subparagraph (a) shall, for the purpose of applying subparagraph (A), (B), or (C), be treated as actually owned by such person, but stock constructively owned by an individual by reason of the application of subparagraph (B) or (C), shall not be treated as owned by him for the purpose of applying either such subparagraph in order to make another the constructive owner of such stock."

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall be applicable with respect to taxable years ending after April 30, 1951, but shall apply only with respect to sales or exchanges made after May 3, 1951.

The accompanying report of the Committee on Ways and Means explained in detail how the rules for the attribution of stock ownership would operate. H. Rept. No. 586, 82d Cong., 1st Sess. (1951), pp. 26, 120–121. However, the Committee on Finance of the Senate eliminated the section from the bill entirely, explaining that:

The House bill attempted to eliminate the tax advantage from such transactions by denying capital gain treatment to the transferor with respect to sales or exchanges of depreciable property between a husband and wife or between an individual and a corporation more than half of the outstanding stock of which is owned by or for him directly or indirectly. For the purpose of determining ownership of stock under the House bill an individual would be considered as owning a portion of the stock held by a corporation, partnership, state or trust which reflects his interest as a shareholder,

## 560

partner, or beneficiary. He would also be considered as owning stock owned directly or indirectly by or for his spouse, and if he and his spouse owned more than 10 percent of the outstanding stock of the company, he would also be considered as owning stock held directly or indirectly, by or for his brothers and sisters, ancestors and lineal descendants.

Upon consideration of this problem by your committee, it is of the opinion that a closer examination into the reported cases should be made before an amendment of this type is adopted. It appears that the House provision would deny capital gains treatment to some bona fide transactions while failing to deny such treatment in cases of clear avoidance. For example, under the provision there would be no bar to the sale of property to a third person who then could sell it to the corporation. Your committee believes that action on this problem should be deferred until actual cases involving use of this avoidance device have been submitted for study. For this reason the bill eliminates the House provision. [S. Rept. No. 781, 82d Cong., 1st Sess. (1951), pp. 69–70.]

The section as finally enacted into law was agreed upon in conference without comment helpful here. H. Rept. No. 1179, 82d Cong., 1st Sess. (1951), p. 77. The conference version simply did not provide the attribution rules contained in the earlier House bill.

Section 707(b)(2),[12] which employs the same approach as does section 1239, namely, treating the gain as ordinary income, expressly refers to and adopts the attribution rule of section 267(c), with one modification. S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), pp. 94, 386–87; cf. H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), pp. 67–68, A226–27; sec. 707(b)(3).

From a survey of these statutory provisions, it would appear that Congress has seen fit, through the application of the different attribution rules as set forth in sections 318(a), 544(a), and 267(c), and certain modifications of these rules as applied to various sections, to apply with precision different attribution rules to different sections of the Code. The reason why Congress has applied such a multiplicity of attribution rules to essentially similar situations is unexplained. Nevertheless, the differences are clear and there is no basis for ascribing them to inadvertence. Thus, we are confronted, on the one hand, with a regulation which on its face would seem reasonable and, on the other hand, with a legislative history which suggests that, if Con-

---

[12] SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP.

(b)(2) GAINS TREATED AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property, which in the hands of the transferee, is property other than a capital asset as defined in section 1221—

(A) between a partnership and a partner owning, directly or indirectly, more than 80 percent of the capital interest, or profits interest, in such partnership, or

(B) between two partnerships in which the same persons own, directly or indirectly, more than 80 percent of the capital interests or profits interests,

any gain recognized shall be considered as gain from the sale or exchange of property other than a capital asset.

(3) OWNERSHIP OF A CAPITAL OR PROFITS INTEREST.—For purposes of paragraphs (1) and (2) of this subsection, the ownership of a capital or profits interest in a partnership shall be determined in accordance with the rules for constructive ownership of stock provided in section 267(c) other than paragraph (3) of such section.

gress had intended "owned" to mean "beneficially owned," it would have said so.

However, it is not our province to decide whether, in the light of the legislative history, we would agree with the correctness of the judgment exercised by respondent in construing the word "owned" in the manner that he has. The authority to prescribe "all needful rules and regulations" for the enforcement of the internal revenue laws is reposed in the Secretary of the Treasury, or his delegate, and not in the courts. The rule is clear that Treasury regulations must be sustained unless clearly unreasonable and plainly inconsistent with the internal revenue statutes; that they constitute contemporaneous constructions by those charged with administration of those statutes which may not be overruled except for weighty reasons. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496 (1948).

There is no positive and direct evidence, either in the statute, the committee reports, or the debates, that Congress intended the word "owned" to be construed narrowly to mean legal ownership. It is true that elsewhere in the Code, Congress specifically attributes stock owned beneficially, while here it has not. It is also true that the section in question, as it passed the House, contained such an attribution rule, only to have it eliminated prior to final passage. However, this fact throws but little light on the legislative purpose because the Senate had eliminated not just the particular rule in question but the entire section. Thus, the evidence of a contrary legislative intent is, at best, negative and circumstantial in character.

If Congress intended to limit "owned" to legal ownership, as it may well have, it has expressed that purpose in such an ambiguous manner that it can only be deduced by inference. Certainly, if we were called upon to construe the statute in the absence of a prior administrative interpretation, we would be justified in drawing our own inferences and basing our decision thereon. That is not the case here. Moreover, we are not unmindful of the fact that Congress has had ample opportunity to express its disagreement with the regulation but has not done so. As we have seen, section 117(o) of the 1939 Code was reenacted, without comment, as section 1239. S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 444. The regulation's first predecessor,[13] which contained language similar to that in question in the present regulation, was approved on June 19, 1953, slightly more than a year prior to the enactment of the Internal Revenue Code of 1954 on August 16, 1954, and, thus, about a year prior to consideration of the Code

---

[13] Regs. 111:

Sec. 29.117-13. * * * a corporation is controlled when more than 80 percent in value of all outstanding stock of the corporation is owned (whether legal ownership or beneficial ownership) by the taxpayer, his spouse, and his minor children and minor grandchildren,* * * [This regulation was added to Regulations 111 by T.D. 6022. The subsequent regulation contained identical language. Regs. 118, sec. 39.117(o)-1.]

by Congress. Congress again had section 1239 under consideration in 1958 when it corrected an omission in the 1954 Code. Sec. 56, Technical Amendments Act of 1958, Pub. L. 85–866. It had a further opportunity to review the regulation at that time.

On balance, we cannot say that the regulation in question is clearly unreasonable. Thus, we necessarily hold that the portion of respondent's regulation, stating that beneficial ownership satisfies the ownership concept of section 1239, applied to the minor trust beneficiaries' interests here in an irrevocable and independent trust, is valid.

Accordingly, we further hold that the petitioners and their minor children and minor grandchildren owned, within the meaning of section 1239, more than 80 per cent in value of the corporation's stock on August 9, 1954, and that statute is applicable to the sale in question.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

FORRESTER, *J.*, dissenting: I believe that Congress' omission of the qualifying phrase "directly or indirectly" from the critical portion of section 1239 was studied and would therefore reach the opposite result.