WILLIAM E. BORBONUS AND GEORGIA BORBONUS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3623–62. Filed August 27, 1964.

*Bernard Sherl,* for the petitioners.
*John B. Murray, Jr.,* for the respondent.

OPINION

FAY, *Judge:* The Commissioner determined a deficiency in petitioners' income tax for the year 1958 in the amount of $2,260.73. The only issue left for decision [1] is whether any portion of $7,000 paid by petitioner William E. Borbonus to his former wife, Lillian Borbonus, in 1958 is deductible as alimony and interest.

All of the facts have been stipulated and are so found.

Petitioners William E. Borbonus (hereinafter referred to as petitioner) and Georgia Borbonus are husband and wife with their present residence in Houston, Tex. During the year 1958 they resided in New York City. They filed their joint income tax return for the year 1958 with the district director of internal revenue, Lower Manhattan, N.Y.

Petitioners used the cash basis method of accounting and reporting for income tax purposes.

Petitioner was formerly married to Lillian B. Borbonus (hereinafter referred to as Lillian) with their date of marriage being August 17, 1929. A daughter, Carole Borbonus (hereinafter referred to as Carole), born on July 24, 1935, was the only issue of the marriage.

On April 26, 1951, in Philadelphia, Pa., the petitioner and Lillian entered into a written property settlement agreement. The material parts of the agreement provide as follows:

AGREEMENT made this 26th day of April, 1951, by and Between LILLIAN B. BORBONUS (hereinafter referred to as "MRS. BORBONUS") and WILLIAM E. BORBONUS, her husband (hereinafter referred to as "MR. BORBONUS").

WHEREAS, the parties hereto married on the 17th day of August, 1929, at Philadelphia, Pa., one child, Carole, aged 15, being born of said marriage; and

WHEREAS, in consequence of disputes and unhappy differences, the parties have heretofore separated and are now, and for some time have been living apart, under an agreement of separation dated January 28, 1949, a copy of which is attached hereto as Exhibit "A"; and

WHEREAS, MRS. BORBONUS has indicated her intention to file suit for divorce against MR. BORBONUS in the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, of which Reno is the county seat; and

WHEREAS, the parties desire to settle their respective property rights and the question of the support of Carole, thus removing the subject matter thereof from the field of litigation in said contemplated divorce proceedings;

NOW THEREFORE:

In consideration of the premises and the mutual promises and undertakings herein contained, the parties, intending to be legally bound thereby, promise and agree as follows:

---

[1] Petitioner has conceded all other adjustments made by respondent.

1. MR. BORBONUS, in full satisfaction of his obligation to support MRS. BOR-BONUS, shall pay to her the sum of One Hundred Twenty-Five Thousand ($125,000.00) Dollars, the said payment to be made in escrow to William A. Gray, Esquire, and Lester J. Schaffer, Esquire, attorneys for MR. BORBONUS, and to Herman L. Sundheim, Esquire, and George S. Munson, Esquire, attorneys for MRS. BORBONUS. * * *

2. MR. BORBONUS further agrees to pay to MRS. BORBONUS for the support, maintenance and education of his daughter Carole the annual sum of Three Thousand Six Hundred Dollars ($3600.00) in equal monthly installments of Three Hundred ($300.00) Dollars per month. It is agreed that said payments shall continue until Carole attains the age of twenty-one (21) years, or until she shall marry, whichever date shall first occur. It is further agreed that in the event of Carole's decease, she then being unmarried, the payments shall continue for a period of one year from the date of such decease, or until she would have attained the age of twenty-one years, whichever shall first occur.

3. The parties agree that the United States Savings Bonds registered in their joint names, in the approximate amount of Six Thousand Three Hundred ($6300.00) Dollars, now in the physical possession of MRS. BORBONUS, shall be retained by MRS. BORBONUS and disposed of as she thinks proper for Carole's use. It is the intention of the parties that the said bonds shall be used for Carole's education, if necessary, or shall be turned over to Carole upon her attaining twenty-one years of age, or upon her marriage, whichever shall first occur.

4. The parties agree, insofar as they are permitted by law to do so, that Carole shall live with MRS. BORBONUS and be under her custody and control. * * *

8. All matters affecting the interpretation of this agreement and the rights of the parties hereto in relation to this agreement shall be governed by the laws of the State of Nevada.

9. The parties have incorporated in this agreement their entire understanding. No oral statement or prior written matter extrinsic to this agreement shall have any force or effect. The parties are not relying upon any representation other than those expressly set forth herein.

10. The parties hereto declare that each has had independent legal advice by counsel of his or her own selection; that each fully understands the facts and has been fully informed of all legal rights and liabilities as heretofore set forth; and that both parties believe the agreement to be just, fair and reasonable and that each signs the same freely and voluntarily.

On June 27, 1951, a decree of divorce was granted to Lillian by the State of Nevada. The pertinent parts of the decree are as follows:

Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the bonds of matrimony heretofore and now existing between the plaintiff and defendant be, and the same hereby are, forever dissolved, and the same are declared forever at an end; that the said plaintiff and defendant are each forever released from the obligations thereof and each is hereby restored to the status of an unmarried person, and that the plaintiff be, and she is hereby granted an absolute decree of divorce herein forever dissolving the bonds of matrimony existing between plaintiff and defendant.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the written agreement between plaintiff and defendant, dated the 26th day of April, 1951, settling the property rights of the parties, and providing for the support of plaintiff herein and for the support, maintenance, custody and control of the minor child of the parties, a copy of which agreement was introduced in evidence herein and marked plaintiff's Exhibit "A", be, and the same is hereby, ratified, approved

and the terms thereof are specifically incorporated by reference as a part of this decree, and the parties hereto are hereby ordered to comply with the terms of said agreement.

Under the terms of the decree of divorce which incorporated the property settlement agreement, petitioner paid to Lillian a lump sum of $125,000.

Petitioner defaulted in the monthly payments due under paragraph 2 of the property settlement agreement for the period from October 1, 1954, to July 24, 1956, inclusive. Lillian brought suit for recovery of the payments due from the petitioner in the Cape May County Court, New Jersey. The complaint, filed by Lillian some time after July 1, 1956, was as follows:

Plaintiff, Lillian B. Borbonus, residing at the Cambridge Apartments in the City and County of Philadelphia, Commonwealth of Pennsylvania, complaining against defendant says that:

1. Plaintiff sues for the sum of $6,540.00 plus interest representing arrearages at $300.00 per month for 22 months covering the period from October 1, 1954 through July 1, 1956 which arrearages have become due and owing under a certain agreement dated April 26, 1951 entered into between plaintiff and defendant whereby the defendant agreed to pay to plaintiff for support, maintenance and education of Carole Borbonus, minor daughter of the parties hereto, the annual sum of $3600.00 in equal monthly installments of $300.00 per month.

2. Said daughter, Carole Borbonus, became of full age on July 24, 1956 and therefore the amount due for the twenty-second month is calculated at 5/6ths of the monthly rate fixed in the agreement or the sum of $240.00.

3. Said agreement for the support, maintenance and education of said minor daughter, was ratified, approved and its terms specifically incorporated in a certain final decree of divorce involving the plaintiff and the defendant herein entered on June 27, 1951 in the Second Judicial District Court of the State of Nevada in and for the County of Washoe.

4. Plaintiff has demanded payment of said arrearages but payment has been refused.

WHEREFORE, plaintiff demands judgment against the defendant in the sum of $6,540.00 together with interest and costs of suit.

On October 15, 1956, the New Jersey court entered judgment for Lillian in the total amount of $7,055.79. The judgment stated:

Judgment by Default, in a Civil Action, is hereby entered in favor of Lillian B. Borbonus, Plaintiff and against William E. Borbonus, Defendant, in the sum of Six thousand nine hundred eighty-three dollars and forty cents ($6,983.40) damages, and Seventy-two dollars and thirty-nine cents ($72.39) costs amounting in all to the sum of Seven thousand fifty-five dollars and seventy-nine cents ($7,055.79).

Carole was 18 years old on July 24, 1953, and 21 years old on July 24, 1956. Carole was married in the year 1957, during the same year that Lillian was remarried.

Lillian, on February 15, 1957, brought suit on the New Jersey judgment in the Supreme Court of the State of New York, county of New York. On September 27, 1957, a motion for summary judgment was made by Lillian and on November 27, 1957, such motion was granted.

On January 6, 1958, the attorneys for petitioner and Lillian entered into a stipulation for the purpose of settling their disputes. The stipulation, which was filed with the New York court, provides, in part, as follows:

WHEREAS, plaintiff, Lillian B. Borbonus, on June 27, 1951, recovered a decree of divorce against the defendant, William E. Borbonus, her then husband, which decree, among other things, required and directed the defendant to pay to the plaintiff the sum of $300.00 per month as and for the support, maintenance and education of their then minor daughter, Carole Borbonus; and

WHEREAS, defendant failed to pay said plaintiff the sum of $300.00 per month as directed by said decree of divorce thereby necessitating plaintiff to commence a civil action against the defendant in the Cape May County Court of the State of New Jersey in which, after personal service of process upon the defendant, a judgement was rendered and entered on October 15, 1956 in favor of the plaintiff against the defendant in the sum of $7,055.79; and

WHEREAS, defendant failed to satisfy the judgment mentioned in the preceding paragraph thereby necessitating plaintiff to commence an action upon said New Jersey judgment against the defendant in the Supreme Court, New York County, which action bears the above entitled index number, 5154/1957 and in which action the defendant appeared by Frederick E. Klein, Esq., his attorney, 52 Wall Street, New York, N.Y. and interposed an answer to the complaint; and

WHEREAS, the plaintiff, by notice of motion dated September 27, 1957, duly moved this Court for an order striking out the defendant's answer and directing the entry of judgment summarily in plaintiff's favor for the sum demanded in her complaint, which application was opposed by the defendant and which came on to be heard before Hon. Henry Clay Greenberg, a Justice of this Court who, after argument and due deliberation determined said application in favor of plaintiff and against the defendant and directed the entry of judgment in the sum of $7,055.79 with interest from October 15, 1956 plus costs and disbursements. A copy of said opinion of Mr. Justice Greenberg is hereto annexed marked Exhibit "A"; and

WHEREAS, the parties hereto have agreed to compose their differences and to settle plaintiff's claims against the defendant as hereinafter set forth.

Now, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties hereto—

(a) That the above entitled action be, and the same hereby is, settled for the sum of Seven Thousand Dollars ($7,000.00) which the defendant agrees to pay to Bernard H. Fitzpatrick, Esq., plaintiff's attorney, 37 Wall Street, New York, N.Y., and which the plaintiff agrees to accept in full settlement and satisfaction of all her claims against the defendant;

(b) The defendant has deposited with Bernard H. Fitzpatrick, Esq., plaintiff's attorney, the sum of Seven Thousand Dollars ($7,000.00) to be held in escrow until the following documents have been delivered by him to defendant's attorney, Frederick E. Klein:

Also included as part of the settlement were the satisfaction of the New Jersey judgment and the discontinuance of the New York suit.

Pursuant to the stipulation agreement, petitioner paid $7,000 to Lillian during the year 1958. Petitioner claimed this amount as a deduction for alimony on his 1958 income tax return. Respondent has disallowed the deduction in its entirety.

Petitioner contends that of the $7,000 paid to Lillian $6,540 constituted the payment of alimony which, by reason of section 71(a)(1) of the Internal Revenue Code of 1954 [2] was includable in her income and thus deductible by him by virtue of section 215. He further contends that the payments were not support payments for minor children, as provided in section 71(b), because the written agreement did not "fix" an amount which was exclusively allocable to the support of his minor child. He relies heavily upon *Commissioner* v. *Lester*, 366 U.S. 299 (1961), and *Weil* v. *Commissioner*, 240 F. 2d 584 (C.A. 2, 1957), affirming in part and reversing in part 22 T.C. 612 (1954) and 23 T.C. 630 (1955). In the alternative, petitioner argues that under Nevada State law, which he claims controls the question of minority, his child was not a minor during the years which generated the $7,000 payment. Accordingly, he maintains that section 71(b) is not applicable to this case. Respondent, on the other hand, contends that the $7,000 payment was for the support of petitioner's minor child and as such not includable in the income of Lillian under section 71(b) and correspondingly not deductible by petitioner under section 215. Respondent argues that the written agreement does specifically "fix" an amount for the support of a child and that the child was a "minor." We agree with respondent.

Section 71(a)(1) provides that:

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

Section 71(b) provides, in part, that:

(b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * *

Respondent concedes that the $7,000 meets the formal requirements of section 71(a)(1). However, respondent contends that section 71(b) applies and accordingly the petitioner does not get a deduction. The Supreme Court in *Commissioner* v. *Lester*, *supra*, in interpreting section 22(k) of the Internal Revenue Code of 1939, the predecessor of section 71(b), had this to say:

We have concluded that the Congress intended that, to come within the exception portion of § 22(k), the agreement providing for the periodic payments must

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954.

specifically state the amounts or parts thereof applicable to the support of the children. * * *

  *   *   *   *   *   *   *

The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. * * *

We feel that the agreement herein comes squarely within the principles stated by the Supreme Court. The agreement provides in paragraph 1 that petitioner, "in full satisfaction of his obligation to support Mrs. Borbonus [Lillian], shall pay to her the sum of One Hundred Twenty-Five Thousand ($125,000.00) Dollars." In paragraph 2, petitioner agrees to "pay to Mrs. Borbonus [Lillian] for the support, maintenance and education of his daughter Carole the annual sum of * * * ($3600.00) in equal monthly installments of * * * ($300.00)." The payments called for in paragraph 2 were specifically allocated for the benefit of petitioner's daughter and no portion thereof was to be paid out for Lillian's benefit. Petitioner, by the provisions of paragraph 1 of the agreement, intended to and did fulfill his complete legal obligation to Lillian. The provisions of paragraph 2 were for the exclusive benefit of petitioner's daughter.

Petitioner argues that certain parts of paragraph 2 of the agreement indicate that Lillian had a beneficial interest in the $3,600 and that under the decision of *Weil* v. *Commissioner, supra*, the payment would not be considered for the exclusive support of his child. Petitioner relies upon the following language of paragraph 2 of the agreement:

It is agreed that said payments shall continue until Carole attains the age of twenty-one (21) years, or until she shall marry, whichever date shall first occur. It is further agreed that in the event of Carole's decease, she then being unmarried, the payments shall continue for a period of one year from the date of such decease, or until she would have attained the age of twenty-one years, whichever shall first occur.

While it is true that the payments to Lillian could have continued for a maximum period of 1 year after the death of Carole if, and only if, she died before 21 while she was still unmarried, we feel this contingency, which never became operative, does not indicate that Lillian was to have or did have any beneficial interest in the funds during the period October 1, 1954, through July 24, 1956. Cf. *Henrietta S. Seltzer*, 22 T.C. 203, 208 (1954). What effect, if any, Carole's death prior to her 21st birthday while she was still unmarried would have had on petitioner's right to a deduction for any payments made pursuant to paragraph 2 of the agreement does not concern us.

The facts in both *Commissioner* v. *Lester* and *Weil* v. *Commissioner, supra*, upon which petitioner relies heavily are materially different from the facts in the instant case. In *Lester* and *Weil*, the husband

agreed to pay the wife for the support and maintenance of herself and the children. The amounts given to the wife and children were not separately stated nor was any specific sum earmarked for the support of the children only. In contrast, the agreement in the instant case clearly contemplates that $125,000 was to be given to the wife in full satisfaction of the husband's obligation to support her. It is also equally clear that the $3,600 per year was to be given to the wife for the support, maintenance, and education of the petitioner's child. Accordingly, we conclude that within the principles of the *Lester* case, the agreement herein does "fix" a sum certain to be used exclusively for child support. Cf. *Eugene F. Emmons*, 36 T.C. 728, 738 (1961), affd. 311 F. 2d 223 (C.A. 6, 1962).

In order for alimony payments to be excluded from the wife's income under section 71(b), the payments, besides being "fixed," must be for the support of the minor children of the husband. Carole was 18 on July 24, 1953, and 21 on July 24, 1956. Although the $7,000 in issue was paid in 1958, the liability for payment arose during the period from October 1, 1954, to July 24, 1956. Petitioner argues that the agreement provides that "All matters affecting the interpretation of this agreement and the rights of the parties hereto in relation to this agreement shall be governed by the laws of the State of Nevada." In brief, he refers us to section 129.010, Nev. Rev. Stat., which provides as follows:

All male persons of the age of 21 years and all females of the age of 18 years, and who are under no legal disability, shall be capable of entering into any contract, and shall be, to all intents and purposes, held and considered to be of lawful age.

Petitioner then concludes that under Nevada law Carole was no longer a minor when the liability to make the payments in issue accrued, and, accordingly, the exception of section 71(b) does not apply. We disagree with petitioner when he says Nevada law is controlling here.

We are dealing here with a Federal statute, and as was said in *Burnet* v. *Harmel*, 287 U.S. 103, 110 (1932):

we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. * * * State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon the state law. * * *

This Court, as well as other courts, has applied the above-quoted language in construing numerous sections of the Code. See *Estate of Ida Wray Nissen*, 41 T.C. 522 (1964), on appeal (C.A. 4, Apr. 13, 1964) (sec. 167(g)); *Estate of Rebecca Edelman*, 38 T.C. 972 (1962) (sec.

2041); *Miller* v. *Commissioner*, 299 F. 2d 706 (C.A. 2, 1962), affirming 35 T.C. 631 (1961), certiorari denied 370 U.S. 923 (1962) (sec. 1221).

We are concerned here with section 71(b). The statute uses the phrase "minor children of the husband." The precise question is what did Congress mean when it uses the word "minor." The section itself does not contain a definition of the word nor is the word "minor" defined any place in the Code. We do know that when the present section 71 came into the law in 1942 one of the main purposes of Congress in enacting this provision was that there would be uniformity of tax treatment of alimony regardless of variations in the laws of the different States. *Commissioner* v. *Lester, supra*; *Bardwell* v. *Commissioner*, 318 F. 2d 786 (C.A. 10, 1963), affirming 38 T.C. 84 (1962); H. Rept. No. 2333, 77th Cong., 2d Sess., p. 72 (1942), 1942–2 C.B. 372; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 83 (1942), 1942–2 C.B. 504. We also know that State law is not binding upon the Federal courts in determining income tax questions arising out of this section. *Commissioner* v. *Lester, supra; Bardwell* v. *Commissioner, supra.*

In view of the above, we feel, that in order to effectuate the purpose of Congress in enacting this provision of the Code, Federal law regarding minority should control. A look to the States for the definition of a minor would bring different and varied results depending upon such factors as age, sex, and marital status. Furthermore, a minor can be defined differently by the States for such varied purposes as drinking, voting, driving, marriage, contracts, wills, etc.[3] Therefore, we conclude that a look to the States for the meaning of the word "minor" would frustrate the clear and sharply defined purpose of Congress. We feel, instead, that a uniform definition of "minor" would more clearly express the intention of Congress. In arriving at a uniform age for the definition of a minor, we are concerned mainly with the fact that we are dealing here with the Internal Revenue Code, a Federal statute. We have searched the Code and find the word "minor" is used in at least three sections besides the one in issue, section 2503(c), section 1239(a), and section 682(a). Section 2503(c), although using the word "minor" in the heading of the subsection, goes on to use age 21 as the dividing line. In *Calvin D. Mitchell*, 35 T.C. 550 (1960), reversed on other grounds 300 F. 2d 533 (C.A. 4, 1962), section 1239(a) was involved. There the children were 19 years old during the years in issue. If they were minors, their stock interests in a corporation would be counted to see if their father had control. If they were not minors, their stockholdings were not to be included. The Commissioner, as well as the taxpayer,

---

[3] Nev. Rev. Stat. sec. 202.020, etc., dealing with intoxicating liquor defines a minor as anyone who has not reached 21 years of age. See also fn. 4, *infra.* Accordingly, even if we were to look at Nevada law, we are not convinced that Nev. Rev. Stat. sec. 129.010, relied upon by petitioner, would control here.

took it for granted that for purposes of the section the children were minors. Accordingly, this Court included their stockholdings in determining the question of control. As far as we were able to determine, this is the first case wherein the meaning of the word "minor" in section 71(b) is in issue.

Having decided that Congress intended a uniform meaning for the word "minor," our next consideration is what definition they had in mind. The common law definition of minor for both males and females was anyone who had not reached his 21st birthday. This is still the rule generally in force throughout the United States. See 27 Am. Jur., Infants, sec. 5, and cases cited therein. The Uniform Gifts to Minors Act, which has been adopted by 46 States [4] and the District of Columbia, defines a minor as "a person who has not attained the age of twenty-one years." Uniform Gifts to Minors Act, sec. 1. We feel that Congress, in using the word "minor," used it in the context of its generally accepted meaning which, we believe, is anyone who has not attained 21 years of age. Accordingly, we hold that Carole was a minor child, as that term is used in section 71(b) and, therefore, the payments for her support and maintenance are not deductible by petitioner.

The only remaining point raised in this case is whether part of the $7,000 paid by petitioner to Lillian is deductible as interest. Petitioner claims that of the $7,000 paid $443.40 represents interest which is deductible by a cash basis taxpayer in the year paid. Respondent maintains that no part of the $7,000 paid represents interest. We agree with petitioner, but not as to the amount claimed.

Petitioner was obligated to pay Lillian for the support of his child the annual sum of $3,600 at the rate of $300 per month. For the period from October 1, 1954, through July 24, 1956, petitioner was in default of his payments. The total arrearages were $6,540. Lillian brought suit in a New Jersey court for the $6,540 plus interest and court costs. The court awarded her judgment in the total amount of $7,055.79. Of this amount, the court stated $6,983.40 represented "damages" and $72.39 represented court costs. After further litigation in the New York court, a settlement was reached between petitioner and Lillian whereby petitioner would pay $7,000 in full discharge of the New Jersey judgment.

If petitioner had paid the entire judgment rendered against him in the amount of $7,055.79, we have no doubt that $443.40 would represent the payment of interest on an indebtedness and would be deductible. Lillian sued for the back support payments plus interest. The legal rate of interest in New Jersey is 6 percent. N.J. Stat. Ann.

---

[4] Nevada adopted the act in 1957 as Nev. Rev. Stat. sec. 167.010, etc. Thus, even Nevada recognizes that for some purposes Carole was a minor. It was this variation even within one State that we feel will be avoided by a uniform meaning for the word "minor."

sec. 31:1-1. The difference between $6,983.40, the sum awarded Lillian, and $6,540.00, the amount sued for, is $443.40, which represents accurately 6-percent interest on each monthly payment of $300 from the due date of each payment up to the date of judgment. The court's designation of $6,983.40 as damages does not change the fact that $443.40 represents interest on an indebtedness which would have been deductible in full if petitioner paid off the entire judgment.

However, petitioner did not pay the entire judgment. He settled for a payment of $7,000, which is $55.79 less than the total judgment. We were given no evidence regarding the composition of the settlement figure. Therefore, mindful of the fact that the burden of proof was on the petitioner, we find that of the $7,000 paid $387.61 represents the payment of deductible interest. Cf. *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930). The case of *Automatic Sprinkler Co. of America*, 27 B.T.A. 160 (1932), relied upon by respondent is distinguishable from the instant case for the reason that the settlement figure therein was less than the principal liability.

*Decision will be entered under Rule 50.*