10–42 CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3720–67. Filed January 6, 1971.

*Donald Steinberg*, for the petitioner.
*Harvey R. Poe*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in petitioner's Federal income tax for the taxable year ending June 30, 1961, in the amount of $25,806.83. Due to a concession by petitioner, there are only two issues remaining for our decision. The first is whether petitioner is entitled to report the gain on the sale of real

594

property under the installment method of section 453, I.R.C. 1954.[1] The second is whether the aforementioned gain is entitled to capital gains treatment or is subject to the provisions of section 1239 relating to sales between related parties.

FINDINGS OF FACTS

The facts are fully stipulated and are found accordingly. Briefly summarized they are as follows. Petitioner is a corporation under the laws of the State of New York, having been incorporated on July 16, 1951. At the time of the filing of the petition herein, its principal place of business was 1501 Broadway, New York, N.Y. Petitioner filed its Federal income tax returns for the taxable years ending June 30, 1960 and 1961, with the district director of internal revenue, Manhattan District, New York. Petitioner's principal business at all pertinent times has been the rental and management of real property.

By contract dated July 1, 1960, petitioner sold to the Tenth Avenue Corp. (hereinafter referred to as Tenth) property consisting of land and building, used as rental property located at 627–629 West 50th Street and 622–630 West 51st Street, New York City. The sales price was $500,000 payable as follows: Tenth would assume a $400,000 mortgage which was then a lien and execute a $100,000 purchase-money mortgage due on July 1, 1971. The mortgage note called for payment of the principal sum of $100,000 on July 1, 1971, with interest from date of execution at the rate of 6 percent per annum and to be paid on January 1, 1961, and semiannually thereafter. There is no provision in the contract of sale for multiple payments of the purchase price and no payment applicable towards the purchase price was received in the year of sale. At all times relevant hereto, Irving Maidman was the sole stockholder of both petitioner and Tenth.

On its tax return for taxable year ended June 30, 1960, petitioner reflected a net long-term capital gain of $96,833.24 from the above sale, and on Schedule D of that return indicated an election to use the installment method of reporting the gain. The parties agree that since the sale occurred on July 1, 1960, it is properly reportable on petitioner's Federal income tax return for the year ending June 30, 1961.

The Commissioner determined in his notice of deficiency that petitioner could not use the installment method to report the gain on the sale and that the total gain was reportable in petitioner's return for the year ended June 30, 1961, as a capital gain. Subsequently, by an amendment to his answer the Commissioner determined that the gain

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.

was reportable as ordinary income by virtue of the provisions of section 1239(a) since the stock of both petitioner and Tenth was owned by a single individual and the sale was thereby an indirect one between an individual and the vendee corporation.

OPINION

We have two issues confronting us. The first is whether petitioner can avail itself of the installment method of reporting income where there is no payment in the year of sale and the sales contract calls for one lump-sum payment *in futuro*. The second is whether a sale between two corporations controlled by the same individual is subject to the provisions of section 1239(a) relating to gain on sales between spouses or between an individual and a controlled corporation.

As to the first issue, section 453 provides in pertinent part:

SEC. 453. INSTALLMENT METHOD.

(a) DEALERS IN PERSONAL PROPERTY.—

(1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(2) TOTAL CONTRACT PRICE.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).

(b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY.—

(1) GENERAL RULE.—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1,000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

(2) LIMITATION.—Paragraph (1) shall apply—

(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953 (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

(i) there are no payments, or

(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 per cent of the selling price.

Petitioner contends that when Congress, in enacting the 1954 Code, eliminated the "initial payments"[2] requirement of the 1939 Code it also eliminated any requirement that there be more than one payment in order for a taxpayer to avail himself of the installment method.

The Commissioner counters by saying that the requirement for multiple payments is clear from the relationship between section 453(a) relating to dealers in personal property and section 453(b) relating to sales of realty and casual sales of personal property. The implied requirement he says is clear from the use in section 453(b) of the phrase "returned on the basis and in the manner prescribed in subsection [453] (a)." The basis and manner referred to is reporting income in any taxable year on the proportion of installment payments received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

Petitioner counters by arguing that the words "basis and in the manner" of section 453(b) refer only to the reporting of income on the gross profit percentage method and not to the requirement of multiple payments. Petitioner contends that if the requirements of section 453(b) are met, then it is entitled to use the installment method. We cannot agree and sustain the Commissioner.

An examination of the legislative history behind section 453 and its predecessor, section 212(d) of the Revenue Act of 1926, discloses the following. The elimination of the "initial payments" requirement was undertaken to relieve doubt "for perhaps a number of years, [about] the status of certain sales in which the initial payments are indefinite or are not payable until sometime subsequent to the year of sale." S. Rept. No. 1622, 83d Cong., 2d Sess., p. 64 (1954). There is no indication, nor can one be implied, that this action in any way revised the reasons behind the initial enactment of the installment method in the Revenue Act of 1926. Section 212(d) of that Act was enacted to provide a third basis for the reporting of income, the other two being the cash basis and the accrual basis. S. Rept. No. 52, 69th Cong., 1st Sess., p. 19 (1926). It was enacted in recognition of the installment basis of accounting. H. Rept. No. 356, 69th Cong., 1st Sess., pp. 32–33 (1926).

The question of what is an installment has been answered by this Court in *Thomas F. Prendergast, Executor*, 22 B.T.A. 1259, 1261–1262 (1931). The question there was whether the decedent, who sold realty in consideration of the issuance to him of two 10-year bonds of the vendee corporation, the principal payable in 10 years with no pay-

---

[2] The 1939 Code required that in the year of sale, payments, i.e., initial payments, could not exceed 30 percent of the selling price.

ments in the year of sale, could use the installment method. The Court held against the petitioner stating:

> An "installment" is defined in Webster's Dictionary as "A portion of a debt or sum of money which is divided into portions that are made payable at different times. The system of making sales, as in conditional sales, for a sum made payable in portions at stated intervals is often called the installment plan." An "installment payment" is defined in Corpus Juris, vol. 32, p. 939, as:
> "A partial payment on account of a debt due; the arrangement of a payment of a sum of money by fixed portions at stated times; the *payment* or the time appointed for payment *of different portions of a sum of money,* which by agreement of the parties, instead of being payable in gross, at one time, is to be *paid in parts,* at certain stated times." [Emphasis supplied.]

This definition adequately covers the situation herein. To hold otherwise would allow a closed transaction properly reportable in a given year to be postponed contrary to express legislative intent. S. Rept. No. 52, 69th Cong., 1st Sess., p. 19 (1926), states that the only deferred-payment contracts to be granted deferred-recognition treatment were installment contracts, thereby implying that there must be more than a single *in futuro* payment in order for a sale to qualify under the statute.

The second issue confronting us is the application, if any, of section 1239(a)[3] to the sale before us, i.e., a sale between two corporations contolled by the same individual.

The Commissioner contends that section 1239(a) applies herein to convert an otherwise capital gain into ordinary income because it is in essence a sale indirectly between an individual and his controlled corporation. The indirection comes about due to the common ownership of both petitioner and Tenth. To allow this sale as a capital gain transaction says the Commissioner, is to circumvent the purpose for which section 1239 was enacted. That purpose was to put an end to the practice of selling depreciable assets to controlled corporations in order to establish a higher depreciation basis at the expense of the capital gain provisions.

The Commissioner's position would equate the word "individual" with "corporation" in section 1239(a)(2) through the use of the word "indirect" which appears in the introductory sentence to section 1239(a).

---

[3] SEC. 1239(a). TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—
  (1) between a husband and wife; or
  (2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;
any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

Once again we have found it necessary to delve into the legislative history behind this provision. Section 1239 originally appeared as section 117(o) of the 1939 Code. Both committee reports focus on the danger of allowing individuals to sell depreciable assets to their controlled corporations. However, the only examples we can find relating to an indirect sale are those familiar ones of the use of a strawman. H. Rept. No. 586, 82d Cong., 1st Sess., p. 26 (1951); S. Rept. No. 781, 82d Cong., 1st Sess., pp. 69–70 (1951).[4]

We do not say that what the Commissioner desires is without merit. He recently took the position for which he contends in Rev. Rul. 69–109, 1969–1 C.B. 202. It would be foolhardy to deny that corporations under common control do not engage in the type of transactions section 1239 specifies. However, we see no way to sustain his position in light of the statute and its history. We feel that his position would deny capital gains treatment to bona fide intercorporate transactions where there is no inkling of tax avoidance. His equation of "individual" with "corporation" through the use of the word "indirect" is not persuasive. Neither the Code, regulations, nor legislative history define "individual" as a corporation whose stock is more than 80 percent owned by an individual. If the Commissioner had offered or been able to offer evidence that the corporations involved were not viable bona fide corporations or that this transaction was a sham, we would have little trouble in accepting his desire to pierce the corporate veil, but without such evidence such a thrust must fail.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[4] In point of fact, the legislative history shows that Congress intended a restricted application of sec. 1239. Sec. 310 of the House bill contained extensive attribution rules. H.R. 4473, 82d Cong., 1st Sess. (June 25, 1951, print). The Senate struck the entire section with a statement by the Finance Committee that a close examination of the decided cases should be made before a provision of this type is adopted. See H.R. 4473, *supra* (Sept. 28, 1951, print); S. Rept. No. 781, 82d Cong., 1st Sess., p. 69 (1951). The Conference Committee adopted the provision in its present form, i.e., without attribution rules. H. Rept. No. 1179, 82d Cong., 1st Sess., p. 77 (1951). In *Calvin D. Mitchell,* 35 T.C. 550 (1960), revd. 300 F. 2d 533 (C.A. 4, 1962), we reluctantly interpreted the word "owned" in sec. 1239 to include beneficial ownership only because of a long-standing regulation. Since there is no regulation applicable to the instant situation (and, in addition, the Commissioner's revenue ruling is of very recent vintage), our *Mitchell* decision, irrespective of its reversal, supports the rejection of the Commissioner's position herein.