ROY MILLER and ARTIE MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Miller v. Commissioner
Docket No. 7378-70.
United States Tax Court
T.C. Memo 1973-68; 1973 Tax Ct. Memo LEXIS 218; 32 T.C.M. (CCH) 294; T.C.M. (RIA) 73068; March 26, 1973, Filed *218 Held: That section 1239 of the I.R.C., 1954, does not require that the gain realized upon the sale of depreciable property by one corporation to another, both of which are controlled by the same individual, be considered as ordinary income. 10-42 Corp., 55 T.C. 593 (1971), followed. Warren Wertheimer, for the petitioners. John Gigounas, for the respondent. BRUCE MEMORANDUM OPINION
BRUCE, Judge: *219 Respondent determined a deficiency in the 1967 income tax of petitioners Roy and Artie Miller in the amount of $1,299.50. The sole question is whether section 1239(a)[1] applies to a sale between two corporations, where 2 more than 80 percent in value of each corporation's outstanding stock is owned by the same individual. All the facts have been stipulated, and the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Roy and Artie Miller were, during the taxable year involved, husband and wife. They filed a joint Federal income tax return for the year 1967 with the district director of internal revenue, San Francisco, *220 California. At the time the petition in this proceeding was filed, the Millers resided in Chico, California. Throughout all the years in issue, petitioners owned 98.354 percent of the outstanding stock of Miller's Market (Miller's), which amounts to an ownership interest of more than 80 percent in value of the outstanding stock in Miller's. From the date of its incorporation, including the years in issue, Miller's was a bona fide corporation operating retail food stores, and it had a taxable status as a small business corporation under subchapter S of the 1954 Code. Throughout all the years in issue, the petitioners owned more than 80 percent in value of the outstanding stock of Carsan Investment Company (Carsan), a corporation. Carsan was incorporated on February 23, 1954, and ever since the date 3 of its incorporation it has been a bona fide corporation. Carsan's basic activity was acquisition and leasing of various types of equipment. This equipment was leased to individuals, unrelated businesses and to Miller's. In August, 1967, Carsan purchased equipment from Miller's for $21,490.00. The sale of this equipment was part of a general plan to have Miller's lease *221 and not own the equipment in all its stores. The purchased equipment, during the entire time it was possessed and owned by Miller's and Carsan, was subject to the allowance for depreciation provided for in section 167. A gain of $19,009.25 was reported by Miller's on the sale, as follows: Selling price
$21,490.00
Original Cost
$69,136.12
Less depreciation (allowed or allowable)
66,665.37
Adjusted basis of property sold
2,480.75
Gain realized on sale
$19,009.25
Reported as ordinary income (pursuant to the recapture provisions of section 1245)
$16,072.15
Reported as long-term capital gain
2,937.10
Total gain reported
$19,009.25 4 Since Miller's was a subchapter S corporation, petitioners reported their proportionate share of the ordinary income and long-term capital gain of Miller's shown above, on the joint income tax return filed by them for 1967. Petitioners' share of the long-term capital gain was $2,889.00 and $1,444.00 of this amount was included in their taxable income as long-term capital gain. Respondent increased petitioners' taxable income by $1,445.00 and explained this adjustment in the notice of deficiency as follows: *222 Since you own more than 80% in value of the stock of both corporations, it is determined that the sale of equipment in 1967 by Miller's Markets to Carsan Investment Company was indirectly a sale between you and the transferee corporation within the meaning of section 1239 of the Internal Revenue Code. Accordingly, your taxable income has been increased by $1,445.00 to take into account as ordinary income that portion of the gain of $19,009.25 which was reported by you as a capital gain. Section 1239 provides as follows: SEC. 1239. GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION. (a) Treatment of Gain as Ordinary Income. - In the case of a sale or exchange, directly or indirectly, of property described in subsection (b) - (1) between a husband and wife, or (2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren; 5 any gain recognized to the transferor from *223 the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. (b) Section Applicable Only to Sales or Exchanges of Depreciable Property. - This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167. (c) Section Not Applicable With Respect to Sales or Exchanges Made on or Before May 3, 1951. -This section shall apply only in the case of a sale or exchange made after May 3, 1951. As already noted, the question presented is whether section 1239(a) applies to a sale between two corporations, where more than 80 percent in value of each corporation's outstanding stock is owned by the same individual. As the above facts indicate, petitioners owned more than 80 percent in value of the outstanding stock of both Millers' and Carsan. Respondent contends that the purpose of the section is to prevent the realization of capital gain upon the sale of a depreciable asset to a controlled corporation. Such *224 a sale would establish a higher depreciable base for the asset at the expense of a capital gain to the transferor while there would be no loss of control over the asset by the transferor. Respondent maintains that a transaction between two corporations controlled by the same individual displays the abuses which 6 Congress sought to curb. It is argued that such a transaction contravenes the policy considerations behind section 1239 and thus is within the ambit of that section. In 10-42 Corp., 55 T.C. 593 (1971) (a Court Reviewed opinion), we considered the precise issue now before us. We held there that section 1239(a) did not apply to a transaction between two corporations controlled by the same individual so as to convert capital gain into ordinary gain. Respondent asserts that the Court erroneously decided the question and that we should now reverse our earlier decision. We disagree. The plain words of section 1239 clearly state that the affected transactions are between two individuals and between an individual and a controlled corporation. Moreover, as noted in our earlier opinion, "Both committee reports focus on the danger of allowing individuals to sell depreciable *225 assets to their controlled corporations." 10-42 Corp., supra, at 598. [Emphasis added.]
Nevertheless, respondent urges that the word "indirectly" in the introductory sentence of the section extends the reach of the provision to transactions between two corporations controlled by the same individual. It is said that because of the common ownership of the corporations, the individual indirectly transfers an asset to a controlled corporation. The 7 Commissioner has taken this position in Rev. Rul. 69-109, 1969-1 C.B. 202. However, as noted in 10-42 Corp., supra, the only indirection mentioned in the committee reports is the familiar one involving the use of a strawman. There is no mention in the statute or in the committee reports of transactions between two controlled corporations. [2] We observed in our earlier opinion that respondent's position "would deny capital gains treatment to bona fide intercorporate transactions where there is no inkling of tax avoidance." 55 T.C. at 598. Thus we are disinclined to think that Congress intended the word "indirectly" to reach a bona fide transaction between two corporations. Because of the language of the *226 statute and its legislative history, we cannot say that "individuals" means "corporation." [3]
Respondent's argument is that the broad conceptual policy considerations behind section 1239 are contravened here. However, it is not inevitable that the section as written was 8 designed to encompass every conceivable transaction which might display some of the basic elements of the tax avoidance which prompted Congress to legislate. It is apparent that Congress intended to restrict the application of this provision. The predecessor of section 1239 was section 117(o) of the Internal Revenue Code of 1939 and was *227 part of the Revenue Act of 1951. Section 328(a), Revenue Act of 1951, Ch. 521, 65 Stat. 452. The bill originally passed by the House of Representatives contemplated a more far-reaching provision than the section eventually enacted. That bill denied capital gains treatment to the proceeds from the sale or exchange, directly or indirectly, of depreciable property "between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly of indirectly, by or for such individual * * * ." H.R. 4473, 82d Cong., 1st Sess., pp. 97-98 (1951). The bill further contained extensive stock attribution rules providing, for example, that "stock owned, directly or indirectly, by or for a corporation, partnership, estate, or trust, shall be considered as being owned proportionately by or for its shareholders, partners, or beneficiaries * * * ." Id., at 98. 9 The Senate rejected the House bill because it "would deny capital gains treatment to some bona fide transactions while failing to deny such treatment in cases of clear avoidance." S. Rept. No. 781, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 507. This rejection by the Senate *228 resulted in the enactment of the present provision which is more limited in its scope than was the House bill. We are not persuaded that this provision was designed to encompass the present transaction. In view of the plain words of the section and its legislative history, we can only conclude that 10-42 Corp., supra, was properly decided. Our adherence to that decision settles the question presented here. The two corporations involved in this proceeding were viable, and the sale of assets between them was a bona fide transaction. The transferor corporation was not a sham entity or a strawman established to allow an individual to sell an asset indirectly, within the meaning of section 1239, to a controlled corporation. Decision will be entered for the petitioners. Footnotes
1. All statutoty references are to the Internal Revenue Code of 1954. ↩
2. There is no need in the present opinion to engage in an extensive discussion of the legislative history of section 1239. That history was discussed in 10-42 Corp., supra, and also in both Court opinions in Calvin D. Mitchell, 35 T.C. 550 (1960), revd. 300 F. 2d 533↩ (C.A. 4, 1962). 3. Not without significance perhaps is the section's use of the term "individual" rather than the term "person." Section 7701(a) (1) defines "person" "to mean and include an individual, a trust, estate, partnership, association, company or corporation." ↩