**Roy MILLER and Artie Miller, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 73–2819.**

United States Court of Appeals, Ninth Circuit.

Feb. 3, 1975.

his Notice of Deficiency of August 31, 1970, pertaining to the taxpayers' return for the calendar year 1967. The essence of this case best can be revealed by quoting from the Commissioner's Notice. Its Explanation of Adjustments reads:

> Since you own more than 80% in value of the stock of both corporations, it is determined that the sale of equipment in 1967 by Miller's Markets to Carsan Investment Company was indirectly a sale between you and the transferee corporation within the meaning of section 1239 of the Internal Revenue Code. Accordingly, your taxable income has been increased by $1,445 to take into account as ordinary income that portion of the gain of $19,009.25 which was reported to you as a capital gain.

After certain adjustments the determined deficiency amounted to $1,299.50.

As the Explanation indicates, the Commissioner insists that the sale of equipment by Miller's Markets, a bona fide Subchapter S corporation engaged in carrying on a trade or business, to Carsan Investment Company, also a bona fide corporation engaged in carrying on a trade or business, was, for purposes of section 1239, an indirect sale by the taxpayers to Carsan because of their ownership of more than 80% in value of the stock of both corporations. The Tax Court rejected this characterization of the transaction and so do we. As a consequence, we affirm the decision of the Tax Court.

George G. Wolf, Atty. (argued), of Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellant.

Warren Wertheimer (argued), Novato, Cal., for petitioners-appellees.

## OPINION

Before WALLACE and SNEED, Circuit Judges, and MILLER,* Judge.

SNEED, Circuit Judge:

This is an appeal from a Tax Court decision which held the taxpayers, Roy and Artie Miller, not liable for the deficiency asserted by the Commissioner in

■ We begin by observing that the Commissioner, to support his position, does not rely on the fact that Miller's Markets is a Subchapter S corporation. His position would be the same even if Miller's Markets were not such a corporation. While this suggests that the taxpayers' ownership of more than 80% in value of both Miller's and Carsan could lead to characterizing the sale as either one by an individual to a corporation, one by a corporation to an individual, or,

---

* Honorable Jack R. Miller, Judge United States Court of Customs and Patent Appeals, sitting by designation.

perhaps, one by an individual to himself, we define the issue before us as that of determining whether the sale under the circumstances of this case constitutes an *indirect* sale "between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren."

The Tax Court in rejecting the Commissioner's contentions, which he has enshrined in Revenue Ruling 69–109, 1969–1 Cum.Bull. 202, relied on the legislative history of section 1239's predecessor, section 117(*o*) of the Internal Revenue Code of 1939 enacted in 1951. See section 328(a), Revenue Act of 1951, ch. 521, 65 Stat. 452. The House version of section 117(*o*) was "intended to forestall the practice of selling depreciable assets to controlled corporations in order to obtain substantial tax benefits available under existing law," H.Rep.No.586, 82d Cong. (1st Sess.) 1951, 1951–1 Cum.Bull. 376. It required that the individual own directly or indirectly more than 50 percent of the value of the outstanding stock and contained fairly elaborate attribution rules to aid in determining whether the individual's indirect ownership met this standard. It contained no explicit provisions purporting to attribute to an individual shareholder a sale made by his controlled corporation to another controlled corporation.

The Senate deleted the entire provision. The explanation for doing so offered by S.Rep.No.781, 82d Cong., 1st Sess. (1951), 1951–1 Cum.Bull. 507, is as follows:

> It appears that the House provision would deny capital gains treatment to some bona fide transactions while failing to deny such treatment in cases of clear avoidance. *For example, under the provision there would be no bar to the sale of property to a third person who then could sell it to the corporation.* Your committee believes that action on this problem should be deferred until actual cases involving use of this avoidance device have been

> submitted for study. For this reason the bill eliminates the House provision. (Italics added.)

The italicized sentence is hard to explain because the House version explicitly included indirect sales by an individual to his controlled corporation and a clearer example of an indirect sale than that described in the sentence is hard to imagine. Compounding the difficulty is the fact that no other passage in the committee reports of either the House, Senate, or Conference sheds any light on the scope of indirect sales.

In any event, the Senate's rejection did not stand. Thereafter the Conference Committee adopted the modified version of the House proposal which became section 117(*o*) of the Internal Revenue Code of 1939 and which is now section 1239 of the 1954 Code. In doing so it described the new provision as one providing "that in case of a sale or exchange, *directly or indirectly,* of depreciable property (1) between husband and wife, or (2) between an individual and a corporation in which he, his spouse, and his minor children and minor grandchildren own more than 80 percent of the value of the outstanding stock, any gain recognized to the transferor [which may be a husband, wife, individual, or corporation] shall be considered ordinary income and not capital gain." (Italics added.) H.Rep.No. 1213, 82d Cong. 1st Sess. (1951), 1951–1 Cum.Bull. 631. There is, of course, no suggestion in this Report that Congress intended the clause "directly or indirectly" to perform the function of attributing to a shareholder, owning more than 80 percent in value of the stock of the transferor corporation, a sale or exchange by that corporation to the transferee corporation in which the shareholder also owned more than the required 80 percent. Had it been the intention to embrace such a transaction we believe that another subsection would have been devised which would have read substantially as follows:

> (x) A sale or exchange, directly or indirectly, between two corporations in both of which more than 80

percent in value of the outstanding stock is owned by the same individual, his spouse, and his minor children and minor grandchildren, shall be deemed for the purpose of this section a sale between such individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, his minor children and minor grandchildren.

Precisely such a provision was added to then section 24 by the Revenue Act of 1937 (which now appears substantially as section 267(b)(3), Internal Revenue Code of 1954), when Congress intended to reach transactions between two corporations owned substantially by the same individual *notwithstanding* that one of the provisions of section 24 was to disallow losses.

Even if such a subsection were not added, it would be reasonable to expect the Conference Report to contain a sentence or two affixing the substance of such a subsection to the statutory word "indirectly" had it intended the word to embrace such a transaction. This is particularly true in light of the apparently very narrow reading of "indirectly" set out in S.Rep.No.781. Nothing of the sort, however, appears in the Conference Report.

Strength for the conclusion that Congress never intended the word "indirectly" to cover intercorporate sales by corporations controlled in the section 1239 sense is added when it is remembered that in 1951 statutory attribution rules had not developed to their present level of sophistication and that effective attempts to recapture previously allowed depreciation allowances upon the sale of depreciable assets at a gain were not to be enacted until a number of years later. *See* section 1245, enacted in 1962, and *section* 1250, enacted in 1964, Internal Revenue Code of 1954. Section 117(*o*) of the Internal Revenue Code of 1939 was a limited recapture device which must be interpreted as Congress then intended it to be understood and not in

accordance with what Congress today might do if confronted with the same problem.

Our conclusion is also strengthened by the fact that the pertinent Treasury regulation contains nothing to indicate that an intercorporate sale under proper circumstances was to be treated as an indirect sale by the controlling shareholder to his controlled corporation. *See* Treas. Reg. 118, § 39.117(*o*)–1 (1953). The Treasury generally is not reticent in asserting an interpretation favorable to the fisc which it believes reasonably reflects the intent of Congress. For example, its regulations under section 117(*o*) and section 1239 provided that beneficial ownership by the individual, his spouse, his minor children and minor grandchildren was equivalent to legal ownership. Treas.Reg. 118, § 39.117(*o*)–1 (1953); Treas.Reg. § 1.1239–1 (1957). This interpretation, quite arguably more reasonable than that presently before us, nonetheless was rejected by the Fourth Circuit on the ground, *inter alia,* that Congress in other sections of the Code, *e. g.,* section 267, employed specific language when it desired equitable ownership to be treated as legal ownership and that its failure to do so should mean that it didn't intend for beneficial ownership to be so treated. Mitchell v. Commissioner, 300 F.2d 533, 535–6 (4th Cir. 1962). *See also* United States v. Rothenberg, 350 F.2d 319 (10th Cir. 1965).

The Tax Court in this case and in 10–42 Corporation, 55 T.C. 593 (1971) states that the legislative history of section 117(*o*) contains only one example of an indirect sale, *viz.* a sale through a strawman. Since this example does not appear to have been intended to illustrate an indirect sale, we do not wish to be understood as suggesting by affirming the Tax Court that the only "indirect" sale brought within the reach of section 1239 is one in which a strawman is used. The term when used in other sections, *e. g.* section 267(a)(1), is broader than that, *see* McWilliams v. Commissioner, 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750 (1947), and we wish to leave

open the possibility that it is also broader in section 1239.[1] Nonetheless, to extend the reach of the word "indirectly" to embrace intercorporate transactions which have no nexus with the controlling individual shareholder other than that which inescapably flows from his status as a controlling shareholder carries us beyond interpretation into the realm of amendment. Into that realm we are forbidden to go. `

Affirmed.

---

1. For example, a sale by the individual shareholder of depreciable equipment at its fair market value to a third party followed by the purchase of substantially equivalent equipment at substantially the same price by the controlled corporation from a fourth party followed or not, as the case may be, by a contribution to the capital of the controlled corporation in the amount of sales proceeds received by the individual shareholder might possibly be considered an indirect sale by the individual to his controlled corporation. Another possible example of such an indirect sale, in this case involving two corporations controlled by the same individual, is where the individual shareholder makes a contribution consisting of depreciable equipment to the capital of controlled corporation A which, after the passage of a planned but significant period of time, sells the depreciable equipment to controlled corporation B for an amount in excess of its adjusted basis.