*Appropriate orders will be entered.*

INSILCO CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2231–77.     Filed December 26, 1979.

*Harold R. Handler* and *Dickson G. Brown*, for the petitioner.
*Michael A. Menillo*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in Federal income tax of petitioner for 1971 of $3,378,664. The issue remaining for resolution is whether members of the affiliated

group, of which petitioner is the parent, are precluded from using for income tax purposes the last-in, first-out (LIFO) method of valuing inventories at December 31, 1971, when petitioner converted its inventories to the moving-average method for purposes of its annual report to its shareholders.

All of the facts in this case have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner is a corporation organized and existing under the laws of the State of Connecticut. Its principal office is, and was at the time the petition herein was filed, located at Meriden, Conn. Petitioner and its subsidiaries filed a consolidated Federal income tax return for the year ended December 31, 1971.

The businesses of International Silver Co. (Silver), Meriden Rolling Mill, Inc. (Meriden), and Times Wire & Cable Co. (Times) were operated as divisions of petitioner prior to the taxable year beginning January 1, 1968, during which year they were separately incorporated as subsidiaries of petitioner. Silver, Meriden, and Times elected the last-in, first-out (LIFO) inventory method for certain of their metal inventories for the taxable year ended December 31, 1968, by filing Forms 970 (Application to Use LIFO Inventory Method) with their separate returns for said period, and no adjustment with respect to the use of such method was proposed in connection with the examinations of the returns of Silver, Meriden, or Times for such year.

Silver, Meriden, and Times maintained detailed inventory records for the year ended December 31, 1971, pursuant to section 1.472–2(h), Income Tax Regs.

All annual financial reports from Silver, Meriden, and Times to petitioner for the year ended December 31, 1971, were prepared using the LIFO inventory method. The 1971 budgets and State tax returns of Silver, Meriden, and Times were prepared in accordance with the LIFO inventory method, and bonuses under the 1971 incentive compensation plans of the three subsidiaries were computed with reference to "net earnings" as determined using LIFO. Silver, Meriden, and Times did not prepare any 1971 financial reports for credit purposes.

Petitioner's board of directors adopted the moving-average method of inventory valuation for purposes of interim and annual reports to shareholders at a meeting held in July 1970,

and petitioner utilized this method, which is not a LIFO method of valuing inventory,[1] in its annual reports for the taxable years ended December 31, 1970, and December 31, 1971.

Petitioner engaged in substantial business activities through operating divisions during the year ended December 31, 1971, and continues to be an operating company.

Section 472 of the Internal Revenue Code[2] governs the use of the last-in, first-out (LIFO) method of inventory valuation. Subsection (e) of that section provides as follows:

(e) SUBSEQUENT INVENTORIES.—If a taxpayer, having complied with [respondent's filing requirements], uses [the LIFO valuation method] for any taxable year, then such method shall be used in all subsequent taxable years unless—

(1) with the approval of the Secretary a change to a different method is authorized; or,

(2) the Secretary determines that *the taxpayer* has used for any such subsequent taxable year some procedure other than [LIFO] in inventorying the goods specified in the application to ascertain the income, profit, or loss of such subsequent taxable year *for the purpose of a report or statement* covering such taxable year (A) *to shareholders, partners, or other proprietors, or beneficiaries,* or (B) for credit purposes; and requires a change to a method different from [LIFO] beginning with such subsequent taxable year or any taxable year thereafter.

If paragraph (1) or (2) of this subsection applies, the change to, and the use of, the different method shall be in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income.

[Emphasis supplied.]

The annual report for 1971 issued by petitioner to its shareholders included, according to the statement of its independent accountants, consolidated balance sheets and related statements of earnings, retained earnings, and changes in the financial position of "Insilco Corporation and its subsidiary companies" and utilized the moving-average method of inventory valuation, rather than the LIFO method, with respect to all inventories. The issue before us is whether such utilization violated the requirements of section 472(e)(2) so as to deny the right to use the LIFO method for the inventories of Silver,

---

[1]Although the stipulation of facts does not so specify, we assume that this method of valuation was utilized not only in respect of petitioner's own inventories (the record does not indicate that petitioner utilized LIFO for its inventories) but also the inventories of Silver, Meriden, and Times. Indeed, if the situation were otherwise, this case would presumably never have arisen.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year at issue.

Meriden, and Times for purposes of the consolidated tax return. Petitioner contends that it did not because each of the three subsidiaries, and not petitioner, were "the taxpayer" and the report was not to their "shareholders." Respondent counters with the arguments that: (1) Petitioner was in effect the agent of Silver, Meriden, and Times and therefore petitioner's annual report was their report and thus the report of "the taxpayer"; (2) petitioner's shareholders were indirect shareholders of each of the three subsidiaries and therefore encompassed by the word "shareholders" or, alternatively, indirect owners of each subsidiary within the meaning of the phrase "other proprietors" as used in section 472(e)(2); and (3) to permit the use, in petitioner's annual report, of anything other than the LIFO method in respect of the inventories of the three subsidiaries would frustrate the purpose of the conformity provision (sec. 472(e)(2)). For the reasons hereinafter set forth, we agree with petitioner.

Section 472(e) had its origin in section 219 of the Revenue Act of 1939, 53 Stat. 877, which amended section 22(d)(5) of the Internal Revenue Code of 1939 to provide for a conformity requirement essentially as it now exists in the 1954 Code. The legislative history of that section is of little help on the issue before us, merely stating that the underlying intent behind the LIFO conformity requirement was to insure that the use of LIFO for tax purposes conformed as nearly as possible with the best accounting practice in the trade or business in order to provide a clear reflection of income. S. Rept. 648, 76th Cong., 1st Sess. 6–7 (1939), 1939–2 C.B. 524, 528; H. Rept. 2330, 75th Cong., 3d Sess. 34 (1938), 1939–1 C.B. 817, 819. The only substantial change in the conformity provision since its original enactment occurred when section 118 of the Revenue Act of 1942, 56 Stat. 814, was enacted so as to make clear that only annual and not interim reports or financial statements were to be considered. Here, again, there is nothing of help in the committee reports, as far as the instant case is concerned. S. Rept. 1631, 77th Cong., 2d Sess. 81–82 (1942), 1942–2 C.B. 504, 566–567; H. Rept. 2333, 77th Cong., 1st Sess. 45–46 (1942), 1942–2 C.B. 372, 409.

The judicial history of section 472(e) has, for all practical purposes, been equally unrevealing. None of the cases involving LIFO issues have been required to face the application of the conformity requirement. In *Gimbel Brothers, Inc. v. United States*, 186 Ct. Cl. 299, 404 F.2d 939 (1968), the parent corporation

and two wholly owned subsidiaries, which were part of an affiliated group filing consolidated returns, were all held not to have filed timely elections to use the LIFO method. The court went on to state (186 Ct. Cl. at 318–319, 404 F.2d at 949):

> Finally, plaintiffs are in any event ineligible to qualify for LIFO for any of the tax years here involved because *their annual reports* for such years valued *their* inventories on the basis of FIFO. Section 22(d) of the Code specifically provides that a taxpayer may not use LIFO with respect to any taxable year if it used any other method in any of certain designated types of reports or statements, including reports to shareholders covering such year. Obviously, a taxpayer should not be permitted to report higher profits to its shareholders than it reports to the Government for tax purposes. [Fn. ref. omitted; emphasis added.]

Aside from the fact that the reference by the Court of Claims to the conformity provision was unnecessary to its decision, it is apparent from the findings of fact that *each* corporation involved had accounted for inventories in its annual report on a basis inconsistent with LIFO and the conformity requirement. See 186 Ct. Cl. at 337–341. In *Kaufmann & Baer Co. v. United States*, 133 Ct. Cl. 510, 137 F. Supp. 725 (1956), the court found as a fact that both the subsidiary and parent were ineligible to use LIFO because the parent had issued an interim report to shareholders based on a non-LIFO method of valuation. That finding, however, was not necessary to the decision because the court found that the LIFO elections were untimely and they had been revoked. Moreover, although the court referred to that finding in its opinion (133 Ct. Cl. at 518, 137 F. Supp. at 730), it did not indicate that it was doing so in the context of section 22(d)(5) of the Internal Revenue Code of 1939 (the predecessor of section 472(e)), nor did it otherwise indicate what, if any, significance attached to the reference. Moreover, it is not clear that the subsidiaries reported their inventories to their parent on the basis of LIFO. In *H. C. Godman Co. v. Busey*, an unreported case (S.D. Ohio 1956, 51 AFTR 1482, 56–2 USTC par. 9856), the issue was whether a subsidiary corporation, also a member of an affiliated group which filed a consolidated tax return, was entitled to use LIFO. The District Court first held that the taxpayer had failed to prove that the LIFO method had in fact been used and further found that there was a similar failure of proof as to such use in the consolidated financial reports.

None of the foregoing cases would seem to provide any meaningful foundation for respondent's position. In fact, the use

of plural designations in the above-quoted language from *Gimbel Brothers* can be read as inferentially supporting petitioner's position. Indeed, such a reading may explain why, shortly after the *Gimbel Brothers* decision, respondent published Rev. Rul. 69–17, 1969–1 C.B. 143, which, if still extant, would have confirmed petitioner's position herein, with the result that this proceeding would never have been instituted.

That ruling, which came 30 years after the predecessor of section 472(e) was enacted, was the first public pronouncement of respondent's view on the issue presented herein.[3] It stated that the conformity requirement of section 472 was satisfied where a subsidiary used LIFO for tax purposes, financial reporting to shareholders, and credit purposes, even if the subsidiary's parent used a method other than LIFO for purposes of reporting to its shareholders. Little more than a year later, respondent had a change of heart. Rev. Rul. 70–457, 1970–2 C.B. 109, revoking Rev. Rul. 69–17, *supra*. The explanation given for the change of heart was terse and endowed with an ipse dixit quality (cf. *Burke Concrete Accessories, Inc. v. Commissioner*, 56 T.C. 588, 600 (1971)):

there is no basis for a parent corporation to convert the LIFO inventory valuation of a subsidiary to a different method of inventory valuation for purposes of consolidated financial statements. To allow such a conversion would tend to frustrate the requirement of the statutory provisions of section 472 of the Code that where the LIFO method is used for Federal income tax purposes it must also be used in reports to shareholders and creditors.[4]

It is against the foregoing background that we turn to an analysis of the issue presented herein and the arguments of the parties. Respondent's regulations permit the members of an affiliated group filing a consolidated return to utilize different methods of accounting as if each member were filing separate returns. Sec. 1.1502–17(a), Income Tax Regs. Respondent concedes the separate taxpayer status of each of the three subsidiaries for the purpose of testing financial conformity under section 472(e). Cf. *Textile Apron Co. v. Commissioner*, 21 T.C. 147 (1953). See Rev. Rul. 70–564, 1970–2 C.B. 109. He argues,

---

[3]The regulations during this 30-year period and even at the present time do no more than parrot the statute. See sec. 29.22(d)–2(5) and (7)(b), Regs. 111; sec. 39.22(d)–2(e) and (g)(2), Regs. 118; sec. 1.472–2(e) and (g)(2), Income Tax Regs.

[4]Rev. Rul. 70–457 specified that it would not apply to consolidated financial statements issued prior to Aug. 31, 1971; hence, only the 1971 taxable year, and not 1970, when substantially the same type of consolidated financial report was used by petitioner, is involved in this proceeding.

however, that petitioner's annual consolidated financial report for 1971 must be attributed to the subsidiaries, thereby violating the conformity requirement, because its issuance was an act by the parent in its agency capacity on behalf of the subsidiaries under section 1.1502–77(a), Income Tax Regs, which provides that, with certain exceptions not material herein, the common parent is "the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year."

Respondent's reliance on his consolidated return regulation is misplaced. As the examples make clear, that regulation merely authorizes the common parent to act for the group with respect to tax matters, such as the preparation of the consolidated return and related administrative matters. See sec. 1.1502–77(a), Income Tax Regs. Since "the taxpayer" in section 472 refers to each of the subsidiaries but the non-LIFO financial statement was issued by Insilco, the statement did not violate the conformity requirements of section 472 because it was not issued by "the taxpayer." As the parties have stipulated, all reports and statements issued by each subsidiary to petitioner as its sole shareholder were based on the LIFO method of inventory valuation.

Our view that respondent's consolidated return regulation should be rejected as a basis for decision is reinforced by two other considerations. In the first place, when the predecessor of section 472(e) was first enacted in 1939 (see p. 592 *supra*), the privilege of filing consolidated returns was limited to certain railway corporations (see *Burke Concrete Accessories, Inc. v. Commissioner*, 56 T.C. at 595 n. 10), a type of business entity that quite obviously would not be likely to be eligible to utilize the LIFO method. Moreover, when the privilege of filing consolidated returns was extended to taxpayers generally by section 159 of the Revenue Act of 1942, 56 Stat. 858–860, there is not the slightest indication that Congress had the relationship between the consolidated return and conformity provisions in mind, although it made changes in both provisions at that time. H. Rept. 2333, *supra* at 34, 101–103, 1942–2 C.B. at 400, 449 (relating to consolidated returns), and H. Rept. 2333, *supra* at 45–46, 1942–2 C.B. at 409 (relating to the conformity provision); S. Rept. 1631, *supra* at 81–82, 1942–2 C.B. at 566–567 (relating to the conformity provision), and H. Rept. 1631, *supra* at 132–135,

1942-2 C.B. at 603-605 (relating to consolidated returns). If Congress had intended that the consolidated return provisions should be supplementary to the conformity provision or vice versa, it could have easily so provided. In connection with the foregoing, we are also constrained to note that, despite the fact that respondent's authority to promulgate consolidated return regulations is extremely broad (see *Covil Insulation Co. v. Commissioner*, 65 T.C. 364, 373 (1975)), nowhere in these regulations is there any reference to section 472(e). To be sure, sec. 1.1502-80, Income Tax Regs., provides for the applicability of the Code or other law to the extent that the consolidated return regulations do not exclude such application. In light of the statutory silence on the specific issue involved herein, however, we think it would be stretching too far to hold for respondent on the basis of this regulation, especially when it explicitly mentions specific sections of the Code but omits any mention of section 472.

In the second place, it is obvious that respondent's reliance on his consolidated return regulation only provides a partial solution to the conformity problem as respondent sees it. It does not cover affiliated group situations where a consolidated return is not filed, although we recognize that Rev. Rul. 70-457, *supra,* reflects a broader spectrum of application.

It may be suggested, although respondent does not so argue, that the wording of the statement of the independent accountants in the 1971 annual report of petitioner to its shareholders (see p. 591 *supra*) is broad enough to make that report also the report of each of the three subsidiaries. We doubt that this reed is sufficient to tip the scales in respondent's favor, but we find it unnecessary to resolve this particular issue, which would produce complexities in situations where the parent did not own all of the issued and outstanding stock of a subsidiary using the LIFO method[5] and the subsidiary made reports consistent with the use of that method to its other shareholders as well as in the financial statement furnished to the parent.

The fact is that, even if petitioner acted as Silver's, Meriden's, and Times' agent in issuing a financial statement using a non-

---

[5]The stipulation of facts merely states that Silver, Meriden, and Times were "separately incorporated as subsidiaries of petitioner" but there is no indication in the record that their entire issued and outstanding stock was not owned by petitioner. Sec. 1504(a) imposes only an 80-percent ownership requirement for eligibility to file a consolidated return.

LIFO method of inventory valuation (or petitioner's annual report was in fact that of each of the subsidiaries as well), respondent would still not be able to prevail. Section 472(e) provides that the nonconforming report or statement must be to the taxpayer's "shareholders, partners, or other proprietors, or beneficiaries." But all annual financial reports made by the subsidiaries to their sole shareholder (petitioner) conformed to the LIFO method used on the consolidated tax return. The statement in question was contained in the annual report issued by petitioner to its shareholders. Respondent seeks to avoid the separateness of the petitioner as the shareholder of the subsidiaries and the shareholders of petitioner by arguing that the latter were indirectly the shareholders of the subsidiaries. We disagree. The courts have consistently been reluctant to adopt the "indirect ownership" theory which respondent espouses, in the absence of specific legislative direction. See, e.g., *Mitchell v. Commissioner*, 300 F.2d 533, 536 (4th Cir. 1962), revg. 35 T.C. 550 (1961); *10–42 Corp. v. Commissioner*, 55 T.C. 593, 597–598 (1971), and particularly n. 4 at 598; compare sec. 267(c), sec. 318 and sections cross-referenced thereto, and sec. 544(a). In *Mead Corp. v. Commissioner*, 116 F.2d 187 (3d Cir. 1940), revg. 38 B.T.A. 687 (1938),[6] the Circuit Court of Appeals rejected respondent's contention that the shareholders of a parent were the shareholders of a subsidiary in order to impute to the subsidiary their purpose to avoid tax as a basis for sustaining the tax on alleged unreasonable accumulations of earnings of the subsidiary. To be sure, the word "its" modified the word "shareholders" in the statute involved in that case (sec. 104, Revenue Act of 1928, 45 Stat. 814; see also sec. 102(a), I.R.C. 1939), but we do not consider this a significant distinction.[7] And in *Rodman Wanamaker Trust v. Commissioner*, 11 T.C. 365 (1948), affd. per curiam 178 F.2d 10 (3d Cir. 1949), both this Court and the Court of Appeals similarly rejected respondent's argument that a purchase of a parent's

---

[6]This reversal was accepted and relied upon by this Court in *Rodman Wanamaker Trust v. Commissioner*, 11 T.C. 365 (1948), affd. per curiam 178 F.2d 10 (3d Cir. 1949).

[7]What little evidence there is indicates that Congress did not intend to attach any significance to the omission of any such qualifying word in the predecessor to sec. 472(e). Thus, S. Rept. 648, 76th Cong., 1st Sess. 6 (1939), 1939–2 C.B. 524, 528, stated "The taxpayer must show that he, for the period the method is to be used for tax purposes, has used no other method for certain business purposes, such as income statements, applications for bank loans, and reports to shareholders." The juxtaposition of words seems to imply that it is the taxpayer's action in respect of persons bearing the specified status relationship to him which controls.

stock by a subsidiary was the equivalent of the parent's redemption of its own stock. See also *Cramer v. Commissioner*, 20 T.C. 679 (1953), wherein this Court refused to look through three corporations and hold that they were in fact owned by a fourth corporation which purchased their stock from shareholders who owned the stock of all four corporations. Cf. *Breech v. United States*, 439 F.2d 409 (9th Cir. 1971), wherein the Court of Appeals, in determining whether a liquidation-reincorporation situation constituted a reorganization under section 368(a)(1)(D), refused to treat the owners of 75 percent of the shares of the "parent" corporation as the owners of a proportionate number of shares of a "subsidiary" corporation.

Moreover, in an analogous situation, we have refused to treat, for purposes of the tax on personal holding companies, the use of property rented by a corporation to a sister corporation as representing the use thereof by the sole shareholder of both the lessor and lessee corporations under a "right * * * obtained directly from the [lessor] corporation or by means of a sublease or *other arrangement*" as provided in section 543(a)(6). (Emphasis added.) See *Allied Industrial Cartage Co. v. Commissioner*, 72 T.C. 515 (1979).

If anything, *Mitchell v. Commissioner, supra*, and *10–42 Corp. v. Commissioner, supra*, involving section 1239, and *Allied Industrial Cartage Co. v. Commissioner, supra*, construing section 543(a)(6), were more compelling cases in terms of adopting an indirect ownership test. Section 1239 refers to "a sale or exchange of property, *directly or indirectly*, between related persons," while section 543(a)(6) covers the situation where the stock of a corporation is owned, *"directly or indirectly*, by or for an individual entitled to the use of the property." (Emphasis added.) Having refused to extend the meaning of shareholders in those situations, we see no reason to do so here where such broad statutory language is absent.

We think that the foregoing cases clearly point in the direction of sustaining petitioner's position, namely, that its shareholders must be treated as being separate from it in its capacity as shareholder of its three subsidiaries. Moreover, we think it significant that when Congress wanted to do so, it has made explicit those situations in which affiliated corporations are to be treated as a single entity. E.g., secs. 179(d)(6)(A) and 243(b)(3)(B). Cf. sec. 999(b)(1). See also *Dorba Homes, Inc. v.*

*Commissioner,* 403 F.2d 502, 506 (2d Cir. 1968), affg. in part and revg. in part T.C. Memo. 1967–150; B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, pp. 16–41—16–42 (4th ed. 1979) (in respect of sec. 269); Rev. Rul. 56–513, 1956–2 C.B. 212 (in respect of sec. 368(c)).

Respondent further argues that the statute refers to "other proprietors" as well as to shareholders. He urges us to apply the rule of ejusdem generis to interpret this phrase to include Insilco's shareholders. In our judgement, respondent is grasping at a straw. In the sequence of "shareholders, partners, or other proprietors, or beneficiaries," it seems obvious that "other proprietors" was not intended to expand the word "shareholders" to include indirect shareholders via the parent-subsidiary chain, but rather was to make certain that entities which were not corporations or partnerships, e.g., a sole proprietorship, were covered. Since the phrase "other proprietors" can be construed as having an independent specific meaning of its own, we see no basis for applying the ejusdem generis rule. *Shearer v. Anderson,* 16 F.2d 995 (2d Cir. 1927), cited by respondent, involved the application of the rule to the phrase "other casualty" in the context of the statutory clause "fires, storms, shipwreck, or other casualty;" the phrase clearly had an omnibus character, with no independent, specific meaning of its own. That case is therefore not in point. See *Appleman v. United States,* 338 F.2d 729, 730 (7th Cir. 1964).

As far as respondent's argument based on policy is concerned, we have several observations. First, we recognize that it may be undesirable to permit an affiliated group to report higher profits to its parent's shareholders than it reports to the Government for tax purposes. See *Gimbel Brothers, Inc. v. United States,* 186 Ct. Cl. at 319, 404 F.2d at 949, quoted at p. 593 *supra.* But, if there is such a policy, we think it is not embraced within the language of the applicable statute herein (sec. 472(e)) and any implementation thereof is for the Congress and not for us. See *Wolter Construction Co. v. Commissioner,* 68 T.C. 39, 46 (1977), on appeal (6th Cir., Sept. 28, 1977). In this connection, we note that respondent may have some room for what he believes to be appropriate corrective action in the area of regulations where consolidated returns are involved although, as we have pointed out (see p. 596 *supra),* such action would have only a partial impact. *Burke Concrete Accessories, Inc. v. Commissioner,* 56

T.C. at 599. Second, the numerous exceptions which respondent has found necessary to attach to the conformity requirement[8] (to say nothing of his vacillation on the very issue involved herein, see Rev. Rul. 69–17, *supra,* and Rev. Rul. 70–457, *supra*) are a clear indication that the boundaries of any such policy consideration are subject to considerable dispute. Third, with respect to respondent's concern that sustaining petitioner may open a loophole for organizing a holding company as a mere device to circumvent the conformity requirement of section 472(e), we think that the courts are not without power to deal with such types of situations within the context of "substance vs. form" or "sham." *Gregory v. Helvering,* 293 U.S. 465 (1935); *10–42 Corp. v. Commissioner,* 55 T.C. at 598.[9] In the instant case, the parties have stipulated that petitioner is and was an active and operating company, engaged in substantial business activities through its operating divisions during the taxable year in issue.

We hold that Insilco's financial report to its shareholders did not violate the conformity requirement of section 472(e).

In order to reflect a concession by petitioner,

*Decision will be entered under Rule 155.*

---

[8]See, e.g., Rev. Rul. 78–304, 1978–2 C.B. 169 (State franchise tax returns); Rev. Rul. 78–246, 1978–1 C.B. 146, revoking Rev. Rul. 73–57, 1973–1 C.B. 218 (consolidated financial statements of foreign parent corporations); Rev. Proc. 78–39, 1978–2 C.B. 542 (conflict with information required by the Securities and Exchange Commission). See also 2 J. Mertens, Law of Federal Income Taxation, sec. 16.39 (Oct. Supp. 1979), discussing several published positions of respondent permitting disclosures of the effect of LIFO in financial statements.

[9]Respondent himself has drawn such a line where the parent utilizing a nonconforming financial statement is a foreign corporation. Rev. Rul. 78–246, n. 8 *supra.*